**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **ROBERT G. MARCELLUS,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 3:15-cv-00481** |
| | ) | |
| **VIRGINIA STATE BOARD OF ELECTIONS,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

Defendants the Virginia State Board of Elections and each of its members (James B. Alcorn, Clara Belle Wheeler, and Singleton McAllister, in their official capacities as Chairman, Vice-Chairman, and Secretary, respectively) (collectively, the Commonwealth) state as follows in support of their Motion for Summary Judgment.

**INTRODUCTION**

This case boils down to whether Plaintiffs have a right to require the Commonwealth to alter its electoral process and print an associative message – a party identifier – on the ballot for local office candidates. The Supreme Court has twice rejected claims that parties have a right to identify with candidates on the ballot, and Virginia law does not burden any constitutional right of the Plaintiffs. If there is a minimal limitation on Plaintiffs' constitutional rights that requires balancing under the *Anderson-Burdick* framework, that limitation is more than sufficiently justified by Virginia's important regulatory interests in minimizing partisanship in local government (including allowing local offices to be officially nonpartisan), promoting impartial local governance and administration of law, and attempting to ensure that as many citizens are eligible to hold local office as possible (under the Hatch Act).

1

## STANDARDS OF REVIEW

**Summary Judgment**

"Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Santens v. Progressive Gulf Ins. Co.*, 56 F. Supp. 3d 788, 791-792 (E.D. Va. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)). If cross-motions for summary judgment are filed, each motion is reviewed separately on its own merits. *Id.* at 792 (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

**Challenges to Election Laws**

As this Court noted in its Memorandum Opinion denying preliminary injunctive relief (docket # 21, at 9-10), constitutional challenges to state election statutes are judged according to the framework of *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

The *Anderson/Burdick* framework recognizes that "[i]f elections 'are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes,' then '[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections.'" *Sarvis v. Judd*, 80 F. Supp. 3d 692, 697 (E.D. Va. 2015) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974), and *Burdick*, 504 U.S. at 433). "Hence, States may enact 'comprehensive and sometimes complex election codes' notwithstanding the fact that '[e]ach provision of these schemes . . . inevitably affects – at least

to some degree – the individual's right to vote and his right to associate with others for political ends.'" *Id.* (quoting *Anderson*, 460 U.S. at 788).

Under *Anderson / Burdick*, the Court "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Sarvis*, 80 F. Supp. 3d at 698 (quoting *Anderson*, 460 U.S. at 789).

Whether the claims at issue implicate the First Amendment, the Fourteenth Amendment, or some combination of the two, the *Anderson/Burdick* framework assesses constitutional challenges to election statutes on a graduated scale.  *Sarvis*, 80 F. Supp. 3d at 697.  Election laws that impose "severe" restrictions or burdens on a plaintiff's rights "must be narrowly drawn to advance a state interest of compelling importance," but "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.'" *Id.* at 698 (quoting *Burdick*, 504 U.S. at 434).  Ultimately, "the State's asserted regulatory interests need only be 'sufficiently weighty to justify the limitation' imposed on the party's rights." *Id.* (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997)); *accord Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008).

## LISTING OF MATERIAL UNDISPUTED FACTS

This case centers on a question of law, there are few material facts, and there are no material facts in dispute.  The parties do not agree that the following facts are material, but these facts are undisputed and provide background to and support for the Commonwealth's Motion:

1) Virginia law permits a party affiliation (or identifier) to be printed on the ballot for party-nominated candidates "for federal, statewide, and General Assembly offices *only.*"  Va. Code § 24.2-613 (emphasis added).

2) In 1870, the General Assembly amended Virginia law to require written ballots for voting.  1869-70 Va. Acts. ch. 76 (excerpt attached as Ex D-11) at 85.[1]  The Commonwealth required the ballot to be "a white paper ticket" containing only "the names of the persons for whom the elector intends to vote" and "the office to which each person so named is intended by him to be chosen."  *Id.*; *accord* Va. Code tit. 3, ch. 8, § 13 (1873) (attached as Ex. D-12).

3) In the 145 years since Virginia's adoption of the written ballot, the Commonwealth has not printed party affiliations on the ballot for candidates for local offices.  *See id.*; Va. Code tit. 5, § 122 (1887) (attached as Ex. D-13); Va. Code Ann., tit. 5, § 122 (1904) (filed previously as Ex. D-1, docket # 12-1); Va. Code Ann., tit. 6, § 153 (1919) (attached as Ex. D-14); Va. Code Ann. § 24.215 (1950) (filed previously as Ex. D-2, docket # 12-2); Va. Code Ann. § 24.1-111 (1973 Repl. Vol.) (filed previously as Ex. D-3, docket # 12-3); Va. Code § 24.2-613.

---

[1]  The Commonwealth's opposition to the motion for a preliminary injunction (docket # 12) submitted exhibits D-1 through D-10 (docket #s 12-1 through 12-10).  For clarity and continuity, the numbering for exhibits submitted with this brief begins with and proceeds from exhibit D-11.

4)      One of the changes contained in the 1970 recodification of Virginia elections statutes was that the Commonwealth began to print the party affiliation for candidates for President of the United States.  *See* 1970 Va. Acts ch. 462 at 853 (excerpts attached as Ex. D-15); Va. Code Ann. § 24.1-111 (1973 Repl. Vol.) ("No names of political parties shall appear on the ballot, except in presidential elections…") (filed previously as Ex. D-3, docket # 12-3).

5)      In 2000, the General Assembly amended Va. Code § 24.613 to its current form, expanding the offices for which candidate party affiliations appear on the ballot to include not just President of the United States but also other elected federal, statewide, and General Assembly offices.  *See* 2000 Va. Acts ch. 514, *available at* http://lis.virginia.gov/cgi-bin/legp604.exe?001+ful+CHAP0514.

6)      The federal offices referenced in Va. Code § 24.2-613 are President of the United States and seats in the United States Senate and House of Representatives.  The statewide offices referenced in Va. Code § 24.2-613 are Governor, Lieutenant Governor, and Attorney General of Virginia.  The General Assembly offices referenced in Va. Code § 24.2-613 are seats in the Senate of Virginia and the Virginia House of Delegates.  SBE Ballot Standards and Verification Procedures, Exhibit J-1 to Joint Stips. of Fact (docket # 17-1) at 2.

7)      With respect to federal, statewide, and General Assembly offices, candidates nominated as representatives of political parties (through party-controlled processes or in a state-run primary election) are listed on the ballot along with an identifier of their nominating party.  Va. Code § 24.2-613.  Candidates that were nominated by petition are identified as "Independent" unless they produce

5

evidence to show that they are the nominee of a "recognized political party" under Virginia law, in which case they will thereafter be treated as a party representative candidate. *Id.*

8) The party identifiers that are used on Virginia ballots are the following letters, which correspond to the names of parties, recognized political parties, and independent candidates: Democrat (D), Republican (R), Libertarian (L), Green (G), Independent Green (IG), Constitution (C), and Independent (I). The ballot lists the candidate's name, a space, a dash, another space, and then the appropriate abbreviation. SBE Ballot Standards and Verification Procedures, Exhibit J-1 to Joint Stips. of Fact (docket # 17-1) at 4.

9) Local elected offices in Virginia include members of the governing body of localities (Board of Supervisors, City or Town Council); members of the School Board (in localities where School Board members are elected rather than appointed); Clerk of Court; Sheriff; Commonwealth's Attorney; Commissioner of the Revenue; Treasurer; and Soil and Water Conservation District Director. Joint Stips. of Fact (docket # 17) ¶ 20 & Ex. J-1 (docket 17-1) at 2. *See also* VA. CONST. art. VII §§ 4 & 5.

10) Virginia law requires that candidates for some local offices qualify for the ballot in a nonpartisan way, by petition. *See* Va. Code § 10.1-523 (Soil and Water Conservation District Directors); Va. Code § 22.1-57.3(E) (members of an elected School Board).

11) Some Virginia localities have charters (which are enacted and amended by the General Assembly) governing whether candidates for certain local offices may be

nominated by parties or only by petition.  *Compare* City of Petersburg Charter

§ 2-3.1 (1974 Va. Acts ch. 2, *as amended*, *available at*

http://law.lis.virginia.gov/charters/petersburg) ("Candidates for the office of

councilman may be nominated by petition or by general law.") *with* City of

Virginia Beach Charter § 3.02:1 (1971 Va. Acts ch. 86, *as amended*, *available at*

http://law.lis.virginia.gov/charters/virginia-beach ("Candidates for council shall

be nominated only by petition in the manner prescribed by general law.").

12) There are 133 localities (counties and independent cities) in Virginia.  Joint Stips.

of Fact (docket # 17) ¶ 19.

13) The individual Plaintiffs were nominated for the Powhatan County Board of

Supervisors by the Republican Party and qualified to appear on the ballot.  Joint

Stips. of Fact (docket # 17) ¶¶ 1-3.[2]

14) Plaintiff Marcellus challenged an incumbent, Larry Nordvig, who was the

Republican nominee in a February 2015 special election.  Decl. of Robert G.

Marcellus (docket # 3, Ex. A) ¶¶ 4-5.  In May 2015, after disagreements within

the local party developed, Nordvig withdrew his bid to run as a Republican and

qualified for the November 3, 2015 ballot as an independent candidate.  *Id.* ¶¶ 23,

26.  Nordvig and other Republicans have continued to associate, and Marcellus

expressed concern that, in the absence of party identifiers printed on the ballot,

voters might be confused about whether Marcellus or Nordvig is the Republican

candidate.  *See id.* ¶¶ 31, 32.

---

[2]   The November 3, 2015 general election has taken place.  Neither the fact that the election has taken place nor the results of the election are material to this case.

15) An official, publicly-accessible election website of the Commonwealth correctly identified Marcellus' and other candidates' party affiliations throughout the campaign. *See* Mem. Op. (docket # 21) at 21 n.26; Joint Stips. of Fact (docket # 17) at ¶ 9 & Ex. J-3 (docket # 17-3).

16) As of the 2010 census, the population of Virginia was 8,326,289, of which 5,170,410 citizens were of working age. Add'l Joint Stips. of Fact (docket # 27) ¶¶ 1(i) & (ii).

17) As of December 2010, there were at least 147,152 federal civilian employees in Virginia. Add'l Joint Stips. of Fact (docket # 27) ¶¶ 1(iii) & n.3.

18) At the end of 2014, the population of Virginia was estimated at 8,326,289, of which 5,312,172 were of working age. Add'l Joint Stips. of Fact (docket # 27) ¶¶ 2(i) & (ii).

19) As of December 2014, there were at least 132,613 federal civilian employees in Virginia. Add'l Joint Stips. of Fact (docket # 27) ¶¶ 2(iii) & n.6.

## ARGUMENT

**I.    The absence of party identifiers on the ballot does not infringe upon Plaintiffs' constitutional rights.**

**A.    Parties and candidates have no right to use the ballot to express a message.**

Supreme Court case law confirms what common sense recognizes: the ballot is a highly-regulated, government-controlled tool for conducting elections, not a forum for expression (other than the expression that occurs when voters exercise their right to vote). *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 453 n.7 (2008) ("Ballots serve primarily to elect candidates, not as forums for political expression.").

In *Washington State Grange*, a political party challenged a Washington initiative that cut off parties' ability under state law to indicate their nominee candidates on the ballot. The Court stated directly that the loss of the ability to identify candidates with parties on the ballot "is unexceptionable: **The First Amendment does not give political parties a right to have their nominees designated as such on the ballot.**" *Washington State Grange*, 552 U.S. at 453 n.7 (emphasis added). The Court explained that, even where the State allows some references to parties on a ballot (such as Washington "afford[ing] candidates the opportunity to indicate their party preference on the ballot"), parties had no right to compel the State to convey their message on the ballot. *Id.*

The Supreme Court also rejected claims of a right to express affiliation on the ballot in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997). In *Timmons*, a party challenged Minnesota's "fusion ban." The Court acknowledged that "[i]t is true that Minnesota's fusion ban prevents the New Party from using the ballot to communicate to the public that it supports a particular candidate who is already another party's candidate." *Id.* at 362. The Court rejected the claim that this was a severe burden on the party's rights, stating: "[w]e are unpersuaded, however, by the party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate." *Id.* at 362-63.

Neither *Washington State Grange* nor *Timmons* involved candidate plaintiffs, but those cases involved the same party-candidate association, and there is no logical reason why a party's candidates would have any more rights to express an associative message on the ballot than the party they represent. And any attempt to distinguish *Washington State Grange* and *Timmons* on the ground that candidates have a right to express their party affiliation would contradict the

Supreme Court's direction that "Ballots serve primarily to elect candidates, not as forums for

political expression." *Washington State Grange*, 552 U.S. at 453 n.7; *accord Timmons*, 520 U.S.

at 363 ("Ballots serve primarily to elect candidates, not as fora for political expression.").[3]

There is no question that parties and candidates have a right to affiliate with each other

and to spread that message of affiliation through any legal means.  But the ballot is a highly-

regulated, government-controlled tool that exists to serve the critical governmental purpose of

conducting elections.  *See generally* SBE Ballot Standards and Verification Procedures, Exhibit

J-1 to Joint Stips. of Fact (docket # 17-1) (regulating ballot content, including such details as

design and font size).  Like the Supreme Court held earlier this year with respect to license

plates, candidates and parties have no right to turn the ballot into a forum for expression, nor to

force the Commonwealth to convey their affiliation message.  *See Walker v. Tex. Div., Sons of*

*Confederate Veterans, Inc.*, 576 U.S. ___, 135 S. Ct. 2239, 2248, 2249, 2253 (2015)

(recognizing that each "license plate is a government article serving the governmental purposes

of vehicle registration and identification," noting Texas's "sole control over the design, typeface,

color, and alphanumeric pattern" of license plates, and holding that "just as Texas cannot require

---

[3]  Taken out of context, a sentence in this Court's *Sarvis v. Judd* decision might be read as
inconsistent with the Supreme Court's direction in *Washington State Grange* and *Timmons* about
the nature of the ballot.  In *Sarvis*, litigants challenged Virginia's method of ballot ordering
among candidates for the same office.  In rejecting that challenge, Judge Payne wrote that "[t]he
ballot is accepted as 'the state devised form through which candidates and voters are permitted to
express their viewpoints,'" citing another district court's opinion that pre-dates *Timmons* and
*Washington State Grange*.  80 F. Supp. 3d at 701.  Voters obviously express viewpoints in
voting.  Whether candidates have a right to express a viewpoint on the ballot was not at issue in
*Sarvis*, and the Commonwealth does not believe the foregoing sentence should be read as
holding that candidates have any such right.  Rather, that sentence should be read as recognizing
two sensible propositions: (i) that a citizen expresses viewpoints and engages in expressive
activity in being a candidate for office, and (ii) as this Court stated immediately after the above
sentence, that it is possible for "the format and structure of the ballot" to "implicate expressive
rights and present a cognizable restriction for the purposes of conducting the *Anderson / Burdick*
analysis."  *Id.*  As discussed in this brief, however, there is no such cognizable restriction on
constitutional rights in this case.

SCV to convey 'the State's ideological message,' SCV cannot force Texas to include a

Confederate battle flag on its specialty license plates") (citation omitted).

**B.**    **Equal protection does not require the Commonwealth to print a party affiliation message on the ballot.**

In argument regarding a preliminary injunction, Plaintiffs disavowed the contention that

they had an affirmative right to have their party affilation shown on the ballot generally.

Plaintiffs emphasized instead the fact that Virginia law does provide for printing party identifiers

on the ballot for candidates for federal, statewide, and General Assembly offices and suggested

that printing identifiers for some offices and not others violates the Equal Protection Clause of

the Fourteenth Amendment.  *See* Docket # 20 (Sept. 3, 2015 Hr'g Trans.) at 15-16:

> To begin with, we've got to restate what our claims are all about.  This is not a case about plaintiffs' insisting they have an absolute right to have party identification on the ballot.  As the Court in the *Rosen* case said, states can decide to have no party identification on the ballot….
>
> Our claim is not that they [Plaintiffs] have an absolute right.  Their claim is that there is an unreasonable and unsupported, unjustified, disparate treatment of local party-nominated candidates when legislative candidates have the party ID and local candidates do not.

Plaintiffs' Equal Protection claim fares no better than an absolute right claim, however.

The first problem with Plaintiffs' Equal Protection claim is the dearth of case law

supporting such a claim.  In light of *Washington State Grange* and *Timmons*, Plaintiffs' attempt

to expand upon older cases that recognize a general right of association, such as *Tashjian v.

Republican Party of Connecticut*, 479 U.S. 208 (1986), fails and does not support their claim that

a State must allow expression of that association on the ballot.

Another problem with Plaintiffs' Equal Protection claim is their failure to appreciate the

significantly different context in the older 6th Circuit case, *Rosen v. Brown*, 970 F.2d 169 (6th

Cir. 1992), upon which Plaintiffs have relied heavily.  There, Ohio discriminated among

candidates for the same office – printing party identifiers for major party candidates but declining to identify independent candidates.  That obviously discriminatory treatment put independent candidates at a disadvantage and evidenced intentional discrimination against non-major party candidates.  *See Rosen*, 970 F.2d at 177.  By contrast, Virginia does not treat candidates for the same office differently, and Virginia's long-standing rule against party identifiers for local office candidates does not advantage some political parties over others.  As a district court in the 6th Circuit has held, *Rosen* stands for the proposition that all candidates for the same office must be treated equally, not that candidates for different offices must appear on the ballot in exactly the same way.  *See Ohio Council 8 American Fed. of State, County, and Municipal Employees, AFL-CIO, et al. v. Brunner, et al.*, 24 F.Supp. 3d 680, 690 (S.D. Ohio 2014), *appeal pending as 6th Cir. no. 14-3678* ("so long as Ohio treats all judicial candidates equally, it need not treat them in the same manner that it treats candidates for other offices").

Plaintiffs' Equal Protection claim essentially asks the Court to apply a First Amendment nondiscrimination principle to the ballot – that where a State opens a forum for expression, it may not discriminate among speakers.  *E.g.*, *Child Evangelism Fellowship v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067 (4th Cir. 2006) ("when the government opens its property to private speech, it may not discriminate based upon the viewpoint of the speaker").  But *Washington State Grange* rejected a similar argument about discrimination among speakers on the ballot. *See* 552 U.S. at 453 n.7 (rejecting the claim that parties gained a right to identify their candidates "simply because the State affords candidates the opportunity to indicate their party preference on the ballot").  And recent Supreme Court case law confirms that the minimal expression allowed on the ballot does not open the ballot as a designated or limited public forum for expression.  *See Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. ___, 135 S. Ct. 2239, 2250

12

(2015) ("A government 'does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse.'") (quoting *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 802 (1985)).[4]

> **C.   Given the absence of a cognizable restriction on constitutional rights, there is no need to proceed to the second part of *Anderson/Burdick* framework analysis.**

In sum, neither the First Amendment nor the Equal Protection Clause of the Fourteenth Amendment give Plaintiffs a constitutional right to require the Commonwealth to print a party affiliation message on the ballot for local office candidates.  The *Anderson/Burdick* framework employs a balancing approach, depending on the severity of the burden on constitutional rights. *See, e.g.*, *Sarvis*, 80 F. Supp. 3d at 697-98.  If there is no cognizable restriction on constitutional rights, there is nothing to balance the State's interests against and therefore no need to proceed to the second part of the *Anderson/Burdick* framework.  If this Court nevertheless assesses the Commonwealth's regulatory interests, it will find that they are "'sufficiently weighty to justify the limitation' imposed on the party's rights."  *Id.* at 698.

**II.   The Constitution does not bar the Commonwealth from listing candidate party identifiers on the ballot for some offices but not for others.**

Applying the *Anderson/Burdick* approach, the Commonwealth's important regulatory interests justify refusing to print party identifiers for local office candidates on the ballot.

---

[4]  Even if there were some appropriate application of the principle of nondiscrimination within a forum, the various offices on the ballot are distinct and should not be treated as part of the same forum.  *See Ohio Council 8*, 24 F.Supp. 3d at 690 ("so long as Ohio treats all judicial candidates equally, it need not treat them in the same manner that it treats candidates for other offices").  *See generally* SBE Ballot Standards and Verification Procures, docket # 17-1, at 2 (setting forth the different sections of the ballot and the order in which sections and offices appear).

### A.     There is no severe burden on constitutional rights.

Plaintiffs "have not asserted" that the lack of a party identifier on the ballot constitutes a severe burden on their associational rights.  Docket # 20 (Sept. 3, 2015 Hr'g Trans.) at 24.  It is difficult to see how they could change their position now and show a severe burden given the Supreme Court's rejection of a right to have a party identifier on the ballot in *Washington State Grange* and *Timmons*.

Va. Code § 24.2-613 obviously does not prevent parties from nominating or supporting a candidate, and it does not prevent parties and candidates from associating throughout the election process.  There simply is no severe burden on constitutional rights given the many available legal means to convey whatever messages Plaintiffs wish to convey about particular candidates and the Republican Party.  *See* Mem. Op. (docket # 21) at 21 n.26 ("The Court notes that party affiliation can be ascertained readily by other means.").  Plaintiffs remain free to use any and all of those means of expressing their affiliation message.  Parties can create and distribute sample ballots that clearly identify candidates who are affiliated with or endorsed by the party. Candidates can engage in mailings, advertisements, and other political speech.  Campaign personnel can stand 40 feet outside the entrance to Powhatan polling places (*see* Va. Code § 24.2-310) with large signs identifying the Republican candidate(s) and a cell phone or other tool to prove that fact for interested voters by reference to official elections websites.  In short, normal campaign efforts of Marcellus and similarly-situated individuals will eliminate or significantly reduce any voter confusion.  *See* Mem. Op. (docket # 21) at 21 n.26 (noting that one of the other means of ascertaining party affiliation is that "the candidates may campaign").

It is well-established that the proper remedy for erroneous, misleading, or even outright false speech is more speech by others.[5]   Accordingly, it is Plaintiffs' responsibility to remedy any voter confusion Nordvig and other Republicans have caused over the identity of the Republican candidate.  *See Sarvis*, 80 F. Supp. 3d at 700 ("If candidates want the votes of uninformed voters, they should inform them.").  Given the many tools at Plaintiffs' disposal to inform voters, prior to and on Election Day, it is clear that the absence of a party identifier on the ballot is not a severe burden on Plaintiffs' constitutional rights.

Last but not least, voters' rights are not burdened by whether party identifiers are printed on the ballot.  Va. Code § 24.2-613 does not inhibit voters volunteering for, contributing to, speaking for, or otherwise supporting or associating with the candidate of their choice.  Section 24.2-613 does not block voters from voting for the candidate of their choice.  Only voters who have a preferred party, but not a preferred candidate, and who have not been informed by the party or candidate or chosen to inform themselves with readily available resources, could hypothetically be harmed.  The Commonwealth is not denying voters information.  The Commonwealth correctly identifies candidates' party affiliations on an official state website; all that § 24.2-613 does is reflect the Commonwealth declining to convey that associative message on the ballot itself.  In short, there is no severe burden on voting rights.

---

[5]  *E.g.*, *United States v. Alvarez*, 567 U.S. ___, 132 S. Ct. 2537, 2550 (2012).  Notably, the Commonwealth has not engaged in any erroneous, misleading, or false speech.  To the contrary, an official Commonwealth election website correctly identified the party affiliations of the candidate Plaintiffs and their opponents throughout the campaign.  *See* Mem. Op. (docket # 21) at 21 n.26; Joint Stips. of Fact (docket # 17) at ¶ 9 & Ex. J-3 (docket # 17-3).

**B.      Section 24.2-613 advances legitimate state interests and does not irrationally or impermissibly discriminate in declining to print party identifiers for candidates for local offices.**

Va. Code § 24.2-613 serves "important regulatory interests" in minimizing partisanship in local government (including allowing local offices to be officially nonpartisan), promoting impartial local governance and administration of law, and attempting to ensure that as many citizens are eligible to hold local office as possible (under the Hatch Act).

### 1.      Minimizing partisanship in local government.

There are many local offices in Virginia, and local officers perform critical governmental functions.  Some local officials – clerks of court – are judicial officers.  Others are quasi-judicial (Commonwealth's attorneys and sheriffs) or perform administrative duties that should be performed in a nonpartisan, impartial manner (treasurers and commissioners of the revenue).  To be sure, there are also local offices that are more "political" in nature, such as members of local governing bodies.  Regardless of the office, however, it is rational, reasonable, and non-discriminatory for the Commonwealth to conclude that local government will function best if partisanship (and the rancor and division that too often accompanies partisanship) is minimized. *See* Ex. D-16 (Darr Decl.) ¶¶ 10-11; Ex. D-17 (Cherry Decl.) ¶ 8; Docket # 12-8 (Flynn Decl.) ¶ 4.  Others may disagree and find value in partisanship, but the Constitution does not forbid the Commonwealth's policy choice, nor mandate an all-or-nothing approach to partisanship in local government.  *See Schuette v. Coalition to Defend Affirmative Action*, 572 U.S. ___, 134 S. Ct. 1623, 1630 (2014) ("our federal structure permits innovation and experimentation and enables greater citizen involvement in democratic processes") (plurality opinion) (quotation marks omitted).  Nor does the Constitution require the Commonwealth to exercise its control over the ballot to make a party affiliation message, which the Commonwealth does not wish to convey, the message a voter sees on the ballot while voting. *See Walker v. Tex.*

*Div., Sons of Confederate Veterans, Inc.*, 576 U.S. ___, 135 S. Ct. 2239, 2249, 2253 (2015) (explaining that Texas need not print license plates "deriding schooling," "praising Florida's oranges," or carrying other messages that Texas does not wish to promote, and concluding that private citizens with a message they want to express cannot force Texas to convey it).

### 2. Promoting impartial local governance and preserving public confidence in local government.

The Commonwealth has an interest in promoting the impartial execution of its laws and preserving public confidence in local government.  Va. Code § 24.2-613 serves that interest by minimizing official sanction of partisanship in local office elections.

The governmental interest in impartial execution of the laws was recognized in *United States Civil Service Commission, et al. v. National Ass'n of Letter Carriers, AFL-CIO, et al.*, 413 U.S. 548 (1973), as so critical that it was dubbed a "great end of Government."  *Id.* at 565. Similarly, Virginia has an important interest in ensuring that local officers do not present even an appearance of "practicing political justice" (*id.*), to avoid the erosion of confidence in local governments.

Parties are free to nominate or endorse candidates, and candidates to associate with a party sharing their political views.  The Commonwealth has concluded that it does not wish to promote partisanship by identifying local office candidates by party on the general election ballot, however, because, once elected, public confidence in officially partisan officeholders may be undermined or those officers may not be able to effectively fulfill their duties if they are fully subject to partisan pressures and influences.  *See* Docket # 12-8 (Flynn Decl.) ¶ 4 (the Virginia Municipal League has an interest in "ensur[ing] that members of the governing bodies of Virginia's cities and towns serve to advance their localities and not to advance any political groups"); Ex. D-16 (Darr Decl.) ¶ 10.  As was noted in *Letter Carriers*, certain offices cannot

function effectively when even the appearance of "political justice" or partisan pressure on officials exists.  413 U.S. at 565-66.

The Commonwealth's interest in impartiality and minimizing official partisanship has particular force with respect to the local officers that are judicial or quasi-judicial (clerks of court, Commonwealth's attorneys, and sheriffs).  *See Williams-Yulee v. Florida Bar*, 575 U.S. ___, 135 S. Ct. 1656, 1666 (2015) (upholding a restriction on judicial candidates' speech based on "the 'vital state interest' in safeguarding 'public confidence in the fairness and integrity of the nation's elected judges'"); *Ohio Council 8 American Federation of State, County, and Municipal Employees, AFL-CIO, et al. v. Brunner*, 24 F. Supp. 3d 680, 690 (S.D. Ohio 2014), *appeal pending* (acknowledging that "judicial elections differ from legislative elections").  The law at issue in *Ohio Council 8* permitted party nomination and endorsement of judicial candidates but mandated a nonpartisan ballot for judicial candidates in the general election.  The court concluded that Ohio's stated interest in diminishing reliance on partisanship in judicial elections "need only be 'legitimate' and 'reasonable' to outweigh Plaintiffs' interest in having party affiliation information on the ballot."  *Id.* at 700 (citing *Timmons*, 520 U.S. at 367).  The Court further noted that "[d]istinguishing judges from candidates running for political office on the general election ballot is a legitimate and reasonable way of advancing the goal of preserving the public's trust that the judge will abide by the rule of law and not partisan influence."  *Id.*

Va. Code § 24.2-613 serves the Commonwealth's interest in promoting impartiality and preserving public confidence in local officeholders by minimizing official sanction of partisanship for local offices.  It is true that there is more the Commonwealth could do to eliminate partisanship for local offices, but the Constitution permits the Commonwealth to take partial steps in service of its important interests in ensuring that partisan influence does not

outweigh – or even appear to outweigh – the rule of law in the performance of official duties. *See Williams-Yulee*, 135 S. Ct. at 1668 ("A State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns.").

### 3.   Promoting federal employee eligibility for local office.

The Hatch Act governs the political activity of federal civilian executive branch employees and limits their involvement in certain partisan activities. Among other things, the Hatch Act bars federal employees from being candidates for public office in partisan elections, but it allows federal employees to be candidates in nonpartisan elections. *See* 5 U.S.C. § 7323(a)(3); 5 C.F.R. § 734.203(b). *See generally* Office of Special Counsel, Advisory Opinion (Nov. 18, 2009), *available at* https://osc.gov/Resources/HAFederalAdvOpinion11-18-09.pdf (last visited Oct. 31, 2015); Ex. D-16 (Darr Decl.) at ¶ 7 & pp. 5-6 (Ex. B, a May 12, 2014 Office of Special Counsel Advisory Opinion issued to Mr. Darr).

The Commonwealth has a large number of federal civilian employees among its citizens. *See* Undisputed Material Facts ¶¶ 16-19, *supra*. And many Virginia municipalities contain or are near federal installations that are significant employers in the area. *See* Ex. D-16 (Darr Decl.) ¶¶ 3-4; Ex. D-17 (Cherry Decl.) ¶¶ 3-4; Docket # 12-8 (Flynn Decl.) ¶ 4.

The Commonwealth has an important interest, which Va. Code § 24.2-613 serves, in attempting to ensure that as many citizens may serve in local offices as possible. The Hatch Act prevents Virginia's federal employee citizens from becoming candidates in partisan campaigns.[6] Va Code § 24.2-613 is not the final word when it comes to the Hatch Act, of course. Whether a campaign is fully nonpartisan for Hatch Act purposes depends not just on ballot content, and not

---

[6]   The effect of the Hatch Act has been mitigated somewhat through a partial administrative exemption for some Virginia municipalities (*see* 5 C.F.R. § 733.107; Ex. D-17 [Cherry Decl.] ¶ 5), but not all Virginia localities enjoy that exemption, and the Hatch Act remains a disqualifying force in other Virginia localities. *See, e.g.*, Ex. D-16 (Darr Decl.) ¶ 9.

just on other statutes that govern candidate qualification processes, but also on the actual activities that occur during a campaign.  *See, e.g.*, Ex. D-16 (Darr Decl.) at pp. 5-6 (an OSC advisory opinion explaining that a law making offices officially nonpartisan establishes only a rebuttable presumption of nonpartisanship).  But Va. Code § 24.2-613's exclusion of party identifiers from the local office sections of the ballot – thereby allowing local office elections to be officially nonpartisan – is clearly reasonable, nondiscriminatory, and furthers the State's interest in allowing federal employees to be local officeholders.  Party identifiers appearing on the ballot for local office candidates (as would occur absent the clause of Va. Code § 24.2-613 at issue in this case) would undo the results of nonpartisan candidate qualification processes, whether required by general law or a locality charter or merely resulting from local custom.

The Commonwealth's legitimate and reasonable interests in minimizing partisanship (especially official sanction of partisanship) in local elections, promoting impartial local governance and administration of law, and attempting to ensure the broadest possible base of potential officeholders are sufficiently weighty to justify the minimal (if any) burden that the prohibition of party identifiers on the ballot imposes on Plaintiffs' constitutional rights.

## CONCLUSION

Because the Commonwealth declining to print a party identifier on the ballot for local office candidates presents no cognizable restriction on Plaintiffs' constitutional rights, and because any minimal limitation the Commonwealth's position does impose is sufficiently justified by the Commonwealth's important regulatory interests, this Court should grant summary judgment in favor of Defendants on both counts in the Complaint.

Respectfully submitted,

VIRGINIA STATE BOARD OF ELECTIONS
JAMES B. ALCORN
CLARA BELLE WHEELER
SINGLETON MCALLISTER

By: _____/s/ - Joshua D. Heslinga_____
                    Counsel

Mark Herring
Attorney General of Virginia

Cynthia E. Hudson
Chief Deputy Attorney General

John W. Daniel II
Deputy Attorney General, Commerce, Environment and Technology Division

Heather Hays Lockerman
Senior Assistant Attorney General, Chief, Financial Law & Government Support Section

Joshua D. Heslinga (VSB # 73036)
Assistant Attorney General
jheslinga@oag.state.va.us

Anna T. Birkenheier (VSB # 86035)
Assistant Attorney General
abirkenheier@oag.state.va.us

*Attorneys for the Virginia State Board of Elections and its members in their official capacities*

Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-3847
fax: (804) 692-1647

## CERTIFICATE OF SERVICE

I certify that, on November 9, 2015, I am electronically filing the foregoing document

with the Clerk of Court using the CM/ECF system, which will serve such filing on counsel of

record:

> Patrick M. McSweeney
> McSWEENEY, CYNKAR & KACHOUROFF, PLLC
> 3358 John Tree Hill Road
> Powhatan, Virginia 23139
> TeL (804) 937-0895
> patrick@mck-lawyers.com
> *Counsel for Plaintiffs*

> _____/s/_____
> Joshua D. Heslinga (VSB # 73036)
> *Attorney for the Virginia State Board of Elections*
> *and its members in their official capacities*
> Office of the Attorney General
> 900 E. Main Street
> Richmond, Virginia 23219
> (804) 786-3847
> fax: (804) 692-1647
> jheslinga@oag.state.va.us

00024698