IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **ROBERT G. MARCELLUS,** *et al.* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 3:15-cv-00481 |
| ) | |
| **VIRGINIA STATE BOARD OF ELECTIONS,** *et al.* ) | |
| ) | |
| **Defendants.** ) | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION
### TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants the Virginia State Board of Elections and each of its members (James B. Alcorn, Clara Belle Wheeler, and Singleton McAllister, in their official capacities as Chairman, Vice-Chairman, and Secretary, respectively) (collectively, the Commonwealth) state as follows in opposition to Plaintiffs' Motion for Summary Judgment (Plaintiffs' Motion, docket # 31) and Plaintiffs' accompanying Memorandum in Support (Plaintiffs' Mem., docket # 32).

### SUMMARY

Plaintiffs repeatedly mischaracterize the Commonwealth's distinction between offices as discrimination among candidates for the same office, distorting Va. Code § 24.2-613 and ignoring undisputed facts and even their own exhibit. Plaintiffs fail to demonstrate a right to compel the Commonwealth to print party identifiers on the ballot for candidates for local offices. The statutory distinction between offices is reasonable, and the Commonwealth's asserted interests are sufficiently weighty to justify any miminal burden on Plaintiffs' constitutional rights. The Court should decline Plaintiffs' invitation to issue a sweeping ruling that the challenged statutory provision is facially unconstitutional, especially given the lack of evidence supporting Plaintiffs' claims.

1

## STANDARDS OF REVIEW

The Standards of Review applicable to Motions for Summary Judgment and to constitutional challenges to state elections laws are set forth in Defendants' Memorandum in Support of Motion for Summary Judgment (Defendants' Mem., docket # 30) at 2-3.

### Facial challenges

At the summary judgment stage, Plaintiffs have cast this case as a facial challenge. (Plaintiffs' Mem. [docket # 32] at 4, 20.) Plaintiffs argue explicitly that Va. Code § 24.2-613's restriction of party identifiers on the ballot to candidates "[f]or federal, statewide, and General Assembly offices only" is unconstitutional "on its face and in all of its applications." *Id.*

Plaintiffs "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

"Facial challenges are disfavored for several reasons," including that they risk "premature interpretation of statutes on the basis of factually barebones records," "run contrary to the fundamental principle of judicial restraint" in constitutional rulings, and "threaten to short circuit the democratic process." *Washington State Grange*, 552 U.S. at 450-51.

If a statute is constitutional in "at least some" circumstances, that is "fatal" to a facial challenge. *Id.* at 457 (citing *Schall v. Martin*, 467 U.S. 253, 264 (1984), for the principle that "a facial challenge fails where 'at least some' constitutional applications exist").

## RESPONSE TO STATEMENT OF UNDISPUTED FACTS

While it does not appear material to the merits of this case, it bears noting that Plaintiffs' statement of facts does not provide or cite evidence establishing that the local party committee plaintiff, the Powhatan County Republican Committee, is "operating in accordance with the RPV Plan of Organization." (Plaintiffs' Mem. [docket # 32] at 2 ¶ 2.)  The statement cites the Complaint (¶ 4), which is unsworn and not evidence except as to allegations that are admitted; the Answer (docket # 23), which states (at ¶ 4) that the Commonwealth lacks knowledge sufficient to respond on that point and so has the effect of a denial under Fed. R. Civ. P. 8(b)(5); and Marcellus's first Declaration (pp. 21-27 in docket # 3), which states (at ¶ 3) only that Marcellus "was nominated … in accordance with the method selected by the Powhatan County Republican Committee as authorized by the Plan of Organization of the Republican Party of Virginia."  The Commonwealth's knowledge has not changed since the Answer.

Additionally, Paragraphs 4 and 5 of Plaintiffs' statement reference and rely upon an Exhibit 5 (docket # 32-8), which is labeled "Sample Ballot" and later described as "Nov. 3, 2015, ballot for Powhatan District No. 2 from State Board of Elections website." (Plaintiffs' Mem. [docket # 32] at 8.)  Plaintiffs give no website address, and Exhibit 5 itself refers to the Powhatan Electoral Board, not the State Board of Elections.  In any event, the Commonwealth agrees that introduction of the Powhatan ballot styles is appropriate and now provides an authenticated, complete set of ballot styles.  *See* Ex. D-18 (Doğu Declaration, authenticating and providing voided copies of each Powhatan ballot style for the 2015 general election).

**ARGUMENT**

I.   **Plaintiffs' misleading portrayal of when the Commonwealth prints party identifiers on the ballot misinterprets Va. Code § 24.2-613, has no factual support, and contradicts even Plaintiffs' own exhibit.**

Plaintiffs repeatedly argue that the Commonwealth distinguishes not just between offices with respect to whether the ballot contains candidate party identifiers but also between types of candidates for the same office. Specifically, Plaintiffs argue that Va. Code § 24.2-613 creates a separate classification for "Independent candidates" and disadvantages only "local, party-nominated candidates." (Plaintiffs' Mem., [docket # 32] at 3, 4-5, 6, 7, 8, & 9.) Neither Virginia law nor the facts support that argument.

The challenged provision of Va. Code § 24.2-613 unambiguously distinguishes whether party identifiers appear on the ballot by office: "**For elections for federal, statewide, and General Assembly offices only**, each candidate who has been nominated by a political party or in a primary election shall be identified by the name of his political party." Va. Code § 24.2-613 (emphasis added). Immediately after that sentence, the statute describes what identifier to use by default for candidates who have been nominated in a nonpartisan, independent way ("Independent"), then how such a candidate may produce evidence that he or she is in fact the nominee of a "recognized political party," in which case the identifier will reflect that party. *Id. See generally* SBE Ballot Standards and Verification Procedures (docket 17-1) at 4 (listing the Libertarian, Green, Independent Green, and Constitution parties as possible party identifiers). The sentences regarding "Independent candidates" in Va. Code § 24.2-613 explain how to treat such candidates for party identifier purposes **if such candidates seek offices for which party identifiers are printed on the ballot**. Those sentences do not change which candidates on the ballot have party identifiers and which do not. Arguing that the Commonwealth treats

4

independent and party-nominated candidates for the same office differently with respect to whether to print party identifiers misreads the unambiguous statutory text.

Undisputed facts also refute Plaintiffs' argument that the statute treats independent and party-nominated candidates for the same office differently. First, the Cortés Declaration provided authenticated copies of all 76 of the 2015 general election ballot styles in Fairfax County. Docket 12-4 ¶ 17. Those balloffs show party identifiers for independent candidates for General Assembly.[1] None contain party identifiers for local office candidates. Second, the Court has official listings of the candidates and their party affiliations in the candidate Plaintiffs' races for Powhatan County Board of Supervisors (*see* docket # 17 ¶ 9 & docket 17-3), as well as copies of each of the 2015 general election ballot styles used in Powhatan. *See* Ex. D-18 (Doḡu Decl.) at ¶ 5 & Ex. A. Comparison shows that none of the candidates for Supervisor, party-nominated or otherwise, had party identifiers on the ballot.[2] Indeed, Plaintiffs' argument that Virginia treats candidates for the same office differently cannot be reconciled even with Plaintiffs' own Exhibit 5 (docket # 32-8), which shows no party identifier for either Plaintiff Marcellus (a party-nominated candidate) or his opponent Nordvig (an independent candidate).

As the Commonwealth already has explained in briefing its motion for summary judgment (*see* Defendants' Mem. [docket # 30] at 11-12), statutory discrimination among

---

[1] *E.g.*, docket 12-4 at 17 [for Senate of Virginia 35th District, "Terry W. Modglin – IG"], 87 [for Senate of Virginia 30th District, "J. Ron Fisher – IG"], 95 [for House of Delegates 43rd District, "Paul J. McIlvaine – I"]).

[2] *Compare* docket 17-3 at 1 *with* Ex. D-18 at 2 (no party identifier for either David T. Williams, Republican, or Russell E. "Russ" Holland, Independent); docket 17-3 at 2 *with* Ex. D-18 at 4 (no party identifier for either Robert G. "Bob" Marcellus, Republican, or Larry J. Nordvig, Independent); docket 17-3 at 3 *with* Ex. D-18 at 6 (no party identifier for either Barry Hodge, Republican, or Angie Cabell, Independent); docket 17-3 at 4 *with* Ex. D-18 at 10 (no party identifier for Timothy L. "Tim" Gresham, Republican, Charlie Bennett, Libertarian, or Carson Tucker, Independent).

candidates for the same office with respect to party identifiers would present a different case. Despite what Plaintiffs' brief suggests, this is not such a case. The Commonwealth distinguishes between offices with respect to printing party identifiers on the ballot; the Commonwealth does not discriminate between candidates for the same office.

II. **Plaintiffs have failed to demonstrate a right to compel the Commonwealth to print party identifiers on the ballot for local office candidates.**

Plaintiffs confirm that they "do not contend that they are entitled as a matter of right by the First and Fourteenth Amendments to have a party identifier next to their names on the ballot." (Plaintiffs' Mem. [docket # 32] at 8.) That concession is required by the two Supreme Court cases rejecting claims of a right to express the association between party and candidate on the ballot. *See Washington State Grange*, 552 U.S. at 453 n.7 ("The First Amendment does not give political parties a right to have their nominees designated as such on the ballot."); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 362-63 (1997) ("We are unpersuaded, however, by the party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate.").

Instead, Plaintiffs claim that the Commonwealth allowing any party identifiers on the ballot opens the door and requires the Commonwealth to print party identifiers for all. *See* Plaintiffs' Mem. (docket # 32) at 8-9 ("Once a State admits a particular subject to the ballot … it must take into account the provisions of the Federal and State Constitutions regarding freedom of speech and association, together with the provisions assuring equal protection of the laws.") (quoting *Rosen*, 970 F.2d at 175). By focusing on "discriminatory treatment," Plaintiffs apparently seek to side-step the key issue of whether their expressive, associational rights extend to the ballot itself.

6

But Plaintiffs' "discriminatory treatment" claims rest on characterizing the ballot as something other than what it is and in a manner contrary to Supreme Court case law. The ballot is a highly-regulated, government-controlled tool that exists to serve the critical governmental purpose of conducting elections. The ballot is not a forum for expression. *See* Defendants' Mem. (docket # 30) at 10; *Washington State Grange*, 552 U.S. at 453 n.7 ("Ballots serve primarily to elect candidates, not as forums for political expression."); *Timmons*, 520 U.S. at 363 ("Ballots serve primarily to elect candidates, not as fora for political expression.").

Allowing party identifiers on the ballot for some offices does not trigger an across-the-board non-discrimination rule and does not transform the ballot into an expressive forum. *See* Defendants' Mem. (docket # 30) at 12-13; *Washington State Grange*, 552 U.S. at 453 n.7 (rejecting the non-discrimination argument that parties gained a right to identify their candidates "because the State affords candidates the opportunity to indicate their party preference on the ballot"); *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. ___, 135 S. Ct. 2239, 2250 (2015) (government does not transform a tool that exists for another important governmental purpose into a public forum "by permitting limited discourse").

In short, Plaintiffs have failed to demonstrate that the First Amendment and the Fourteenth Amendment give Plaintiffs the right to compel the Commonwealth to express Plaintiffs' desired associative message on the ballot through a party identifier.

### III. Distinguishing local offices is reasonable, and any burden on constitutional rights is justified by Virginia's interests.

Plaintiffs concede that the "burden on the associational rights of a political party and its nominees when a statutory restriction prohibits the placement of a party identifier on the ballot next to each nominee's name …. is not severe and, therefore, does not require the application of the strict scrutiny test." (Plaintiffs' Mem. [docket # 32] at 7, citing *Timmons*, 520 U.S. at 359.)

Accordingly, even assuming the bar on ballot party identifiers for local office candidates imposes some limit on constitutional rights, the Commonwealth need only assert interests sufficiently weighty to justify the limitation. *See* Defendants Mem. (docket # 30) at 3 (setting forth the *Anderson*/*Burdick* framework standard of review). The Commonwealth has met that test here.

### A. The Commonwealth's conclusion that local elected offices are different than federal, statewide, and General Assembly offices is reasonable.

Plaintiffs argue that the Commonwealth cannot identify a legitimate difference between elected offices that corresponds to the party identifiers distinction in the challenged provision of Va. Code § 24.2-613. *See* Plaintiffs' Mem. (docket # 32) at 10-11. That is wrong.

Federal, statewide, and General Assembly offices in Virginia have a different nature from judicial (clerk of court), quasi-judicial (sheriffs), and administrative (treasurer and commissioner of the revenue) local elected offices. Voters do not elect comparable state officials. *See* Va. Code § 17.1-200 (the Clerk of the Supreme Court of Virginia); Va. Code § 52-2 (the Superintendent of the Virginia State Police); Va. Code § 2.2-800 (the state Comptroller); Va. Code § 58.1-200 (the state Tax Commissioner). It is possible to characterize the Attorney General's limited prosecutorial powers as somewhat similar to local prosecutors (Commonwealth's Attorneys), but the drafters of the current Constitution of Virginia made a deliberate decision to move the Attorney General into the executive branch and to change the office of Attorney General of Virginia in key ways befitting an executive position.[3] And neither

---

[3] *See* VA. CONST. art. V (Executive) §§ 15 & 16; II A.E. DICK HOWARD, COMMENTARIES ON THE CONSTITUTION OF VIRGINIA 664 (1974) (in 1969, the Attorney General "was moved from the judicial to the Executive article," made subject to impeachment rather than a judicial removal procedure, and added to gubernatorial succession) (copy attached as Ex. D-19). Scholars may debate the nature and extent of certain powers of the Attorney General (*see id.* at 665-70), but the Attorney General has long taken the position that Attorney General opinions are legal advice and do not make or change the law. "Official Opinions," Office of the Attorney General *at* http://ag.virginia.gov/index.php/citizen-resources/opinions/official-opinions (last visited Nov.
*(footnote continued on next page)*

federal nor state law provides any basis for Plaintiffs' attempt to portray the Governor as judicial. Indeed, the very case cited by Plaintiffs in arguing that the Governor has "true judicial powers" (Plaintiffs' Mem. [docket # 32] at 13) actually describes the Governor's "executive clemency decision-making" as a "non-judicial" remedy. *Snyder v. Alexandria*, 870 F. Supp. 672, 681 n.18 (E.D. Va. 1994). Supreme Court case law and Virginia law agree that the Governor's clemency powers are executive, not judicial.[4]

Even with respect to the members of local governing bodies (such as boards of supervisors and city and town councils), federal, statewide, and General Assembly officials have a different policy-making role. Virginia adheres to the "Dillon Rule of strict construction," which controls the powers of local governing bodies and limits the scope of policy-making by localities. *E.g.*, *City of Chesapeake v. Gardner Enters.*, 253 Va. 243, 246, 482 S.E.2d 812, 814 (Va. 1997). There is a clear difference between the limited policy-making power delegated to Virginia localities and the broad policy-making powers of the President, Congress, the General Assembly, and the Governor. It is reasonable for the Commonwealth to conclude that there should be a corresponding difference with respect to whether the ballot conveys a message of party affiliation. *See* Darr Decl. (Ex. D-16, docket # 30-6) ¶ 10. It is also reasonable for the Commonwealth to conclude that it is unhelpful and unnecessary for the ballot to emphasize partisanship for local offices. *See id.*; Cherry Decl. (Ex. D-17, docket # 30-7) ¶¶ 8-9. Plaintiffs may disagree with the General Assembly's judgment regarding whether a ballot party identifier

---

20, 2015) ("Official opinions represent the attorney general's analysis of current law …. <u>They are not 'rulings' and do not create new law, nor do they change existing law.</u> … Official opinions are legal advice…").

[4] *Accord Herrera v. Collins*, 506 U.S. 390, 411-15 & n.12 (1993) (detailing that, throughout history, executive clemency has been a non-judicial safeguard); VA. CONST. art. V (Executive) § 12 (Executive clemency); *Gallagher v. Commonwealth*, 284 Va. 444, 450-51, 732 S.E.2d 22, 25 (Va. 2012) (discussing the "executive clemency power" in Virginia).

is appropriate or helpful for local offices, but the United States Constitution does not require the Commonwealth to adopt Plaintiffs' view. *See* Defendants' Mem. (docket # 30) at 10-11. Nor does the challenged provision of Va. Code § 24.2-613 inhibit the Plaintiffs from conveying their views and messages. *See id.* at 14-15.

### B. The asserted state interests are sufficiently weighty to justify the burden.

As previously briefed (*see* Defendants Mem. [docket # 30] at 16-20), any minimal limitation imposed on constitutional rights by the challenged provision of Va. Code § 24.2-613 is justified by the Commonwealth's legitimate and reasonable interests in minimizing partisanship (especially official sanction of partisanship) in local elections, promoting impartial local governance and administration of law, and attempting to ensure the broadest possible base of potential officeholders.

According to Plaintiffs, printing some party identifiers on the ballot triggers a constitutional requirement that the Commonwealth convey such a message of partisanship on the ballot for all offices. That legal position is unpersuasive. *See supra*, § II, at 6-7; Defendants' Mem. [docket #30] at 11-13, 16-20. If successful, Plaintiffs' position also portends significant negative consequences. It threatens to create or exacerbate partisan divisiveness and degrade local governance by increasing partisanship at a local level. *See* Darr Decl. (Ex. D-16, docket # 30-6) ¶¶ 10, 12; Cherry Decl. (Ex. D-17, docket # 30-7) ¶ 8. By adding official emphasis to party affiliation as a measure of candidates for judicial, quasi-judicial, and administrative local elected offices, it threatens to undermine local civil service and call into question whether such local officials practice political justice or administration. *See* Defendants' Mem. (docket #30) at 17-18. And it threatens to discourage and potentially disqualify federal employees from serving in local office by increasing partisan local elections, which (absent an exemption) the Hatch Act requires federal employees to avoid.

## IV. The lack of evidence supporting Plaintiffs' position makes invalidating the challenged provision of Va. Code § 24.2-613 inappropriate.

It is true that this case centers on a question of law. But in requesting a sweeping ruling that the statutory provision at issue is facially unconstitutional, Plaintiffs ignore the real focus of elections cases and improperly assume that mere allegations of discriminatory treatment are sufficient to merit summary judgment in their favor.

"The primary concern" in ballot cases "is not the interest of the candidate but of the voters who support the candidate and the views espoused by the candidate." *Cromer v. State of South Carolina*, 917 F.2d 819, 822 (4th Cir. 1990) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 786-88, 806 (1983)). Here, Plaintiffs have conceded that the burden imposed "when a statutory restriction prohibits the placement of a party identifier on the ballot next to each nominee's name …. is not severe." (Plaintiffs' Mem. [docket # 32] at 7, citing *Timmons*, 520 U.S. at 359.) But Plaintiffs have adduced no evidence regarding Va. Code § 24.2-613's actual effects on voters. Plaintiffs offer no expert witnesses to address mistrust, negative inferences, or any other possible effect on voters of the lack of party identifiers on the ballot for local office candidates. Aside from Marcellus's conclusory comments about interactions with unspecified voters months ago and a four-year-old newspaper article,[5] Plaintiffs have offered no declarations or other documentary materials regarding the effect on voters. Nor have Plaintiffs offered any evidence that any effect on voters cannot be cured by normal campaign activities. *See* Mem. Op. (docket # 21) at 21 n.26 ("party affiliation can be ascertained readily by other means. First, the candidates may campaign."). Instead, Plaintiffs cite cases that refer to partisan voting cues or

---

[5] *See* Decl. of Robert G. Marcellus (pp. 21-27 in docket # 3) at ¶¶ 28, 30, & 32; Ex. J-7 to Joint Stips. of Fact (docket 17-7). As the Commonwealth briefed in opposition to the motion for a preliminary injunction, the 2011 newspaper article does not show any relevant voter confusion or negative effect on Marcellus. *See* Defs.' Mem. Opp'n (docket # 12) at 21-22 n.12.

"the climactic moment of choice"[6] and then expressly invite this Court to make a sweeping, fact-free ruling about ballot party identifiers. *See* Plaintiffs' Mem. (docket # 32) at 20 ("No factfinding is required to determine the statute's effect…. The specific provision of the statute that the Plaintiffs seek to invalidate violates their right of association and their right to equal protection on its face and in all of its applications."). The Court should decline that invitation.

Beyond the voters, Plaintiffs erroneously assume that allegations of injury are sufficient with respect to the effect on Plaintiffs themselves. Application of the *Anderson/Burdick* framework requires assessing "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate."[7] It is unclear how the Court can assess the asserted injury in Plaintiffs' favor without evidence. Plaintiffs chose not to submit expert evidence like that in *Rosen* (*see* 970 F.2d at 172-73) or other evidence demonstrating significant injury. Plaintiffs' evidentiary cupboard is bare, as in *Dart v. Brown*, 717 F.2d 1491 (5th Cir. 1983), *cert. denied*, 469 U.S. 825 (1984), which rejected a Libertarian candidate's challenge to a Louisiana statute that resulted in party identifiers appearing on the ballot only for the candidate's major party opponents and not for him. After finding any injury to constitutional rights from the lack of a ballot party identifier to be "minor, indirect and remote," the Fifth Circuit explained that such a claim might be valid with evidence of a significant effect on voters but that the record did not establish any such effect:

---

[6] *See* Plaintiffs' Mem. Supp. (docket # 32) at 7-8. Specifically, Plaintiffs cite a dissent in *Washington State Grange*, which obviously did not become law in that case; older Supreme Court cases regarding racial labeling of candidates or associational rights generally, which are inapt; and two cases from another circuit that concern materially different provisions of Ohio law. Those authorities do not bind this Court or establish as a matter of law that Plaintiffs have suffered an injury of sufficient character and magnitude to outweigh the Commonwealth's asserted interests.

[7] *Sarvis*, 80 F. Supp. 3d at 698 (quoting *Anderson*, 460 U.S. at 789); *see* Mem. Op. (docket # 21) at 9-10.

> Perhaps the inability of a candidate affiliated with a "minor" party to have the ballot designate his party affiliation, while the respective party affiliations of candidates affiliated with "major" parties do appear on the ballot, diminishes the former's chances of success in any given election. If this were true to any really significant extent, the lack of party designation *might* arguably be said to impair the ability to cast a *meaningful* vote, or to *meaningfully* associate for the enhancement of political beliefs. But the truth of such a proposition is by no means self-evident, and there is no evidence in this record, and appellants point to no recognized literature or facts of common knowledge, so demonstrating.

*Dart*, 717 F.2d at 1504-05 (emphases in original); *see also Rosen*, 970 F.2d at 176 (distinguishing that case from *Dart* based on the extensive expert evidence submitted). Absent evidence, it is unclear how Plaintiffs expect this Court to "fully appreciate [Va. Code § 24.2-613's] effects and applications." (Plaintiffs' Mem. (docket # 32) at 20.)[8]

This case exemplifies the Supreme Court's warnings about facial challenges in *Washington State Grange*, 552 U.S. at 450. Based on factually barebones claims, Plaintiffs ask the Court for an unrestrained constitutional ruling. And such a ruling would short circuit the democratic process. Although the lack of party identifiers on the ballot for local office candidates has a 145 year history in Virginia, this is not an instance of blind adherence to an ancient rule, or of a law enacted long ago and since forgotten. To the contrary, the General Assembly over time has continued to consider the issue of party identifiers on the ballot – first concluding that party identifiers were appropriate for presidential candidates in 1970, then expanding party identifiers to Congressional, statewide, and General Assembly offices in 2000.

---

[8] By contrast, evidence has been submitted that supports granting summary judgment to the Commonwealth. The Commonwealth has established the history of ballot party identifiers in Virginia law and provided evidence of the careful and detailed regulation of the ballot in Virginia, confirming application of the Supreme Court's assessment of the ballot as a tool for conducting elections, not a forum for expression. The Commonwealth has detailed and distinguished the various local elected offices in Virginia and demonstrated that it does not discriminate among candidates for the same office. And the Commonwealth has identified interests that are served by avoiding the official endorsement of and emphasis on partisanship that ballot party identifiers for local office candidates would convey.

13

*See* Defendants' Mem. (docket # 30) at 4-5 (Material Undisputed Facts ¶¶ 2-5). In recent years, the General Assembly has repeatedly considered and declined to expand party identifiers to local offices.[9] The sweeping ruling sought by Plaintiffs would cut off the General Assembly's careful consideration of the issue over time and should be avoided.

## CONCLUSION

Because Plaintiffs have failed to provide law or evidence sufficient to rule that the Commonwealth must print party identifiers on the ballot for local office candidates, and because the Commonwealth has met the *Anderson*/*Burdick* test, the Court should deny Plaintiffs' motion for summary judgment and grant summary judgment in favor of the Commonwealth.

                                            Respectfully submitted,

                                            VIRGINIA STATE BOARD OF ELECTIONS
                                            JAMES B. ALCORN
                                            CLARA BELLE WHEELER
                                            SINGLETON MCALLISTER

                                            By:     /s/ - Joshua D. Heslinga
                                                         Counsel

Mark Herring
Attorney General of Virginia

Cynthia E. Hudson
Chief Deputy Attorney General

---

[9] *See, e.g.*, Flynn Decl. (docket # 12-8) ¶ 3; HB 645 (2014 Session), at http://lis.virginia.gov/cgi-bin/legp604.exe?ses=141&typ=bil&val=HB645; HB 622 (2012 Session), at http://lis.virginia.gov/cgi-bin/legp604.exe?ses=121&typ=bil&val=HB622; SB 82 (2008 Session), at http://lis.virginia.gov/cgi-bin/legp604.exe?ses=081&typ=bil&val=SB82 (all last visited Nov. 16, 2015). With respect to past legislation, the Court "may properly take judicial notice of matters of public record," *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), and the Fourth Circuit has applied that principle to materials published on official Virginia legislative websites. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (noting it was proper to take judicial notice of publicly available statistics "on the official redistricting website of the Virginia Division of Legislative Services").

John W. Daniel II
Deputy Attorney General, Commerce, Environment and Technology Division

Heather Hays Lockerman
Senior Assistant Attorney General, Chief, Financial Law & Government Support Section

Joshua D. Heslinga (VSB # 73036)
Assistant Attorney General
jheslinga@oag.state.va.us

Anna T. Birkenheier (VSB # 86035)
Assistant Attorney General
abirkenheier@oag.state.va.us

*Attorneys for the Virginia State Board of Elections and its members in their official capacities*

Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-3847
fax: (804) 692-1647

## **CERTIFICATE OF SERVICE**

I certify that, on November 23, 2015, I am electronically filing the foregoing document with the Clerk of Court using the CM/ECF system, which will serve such filing on counsel of record:

>Patrick M. McSweeney
>McSWEENEY, CYNKAR & KACHOUROFF, PLLC
>3358 John Tree Hill Road
>Powhatan, Virginia 23139
>TeL (804) 937-0895
>patrick@mck-lawyers.com
>>*Counsel for Plaintiffs*

>>/s/
>>Joshua D. Heslinga (VSB # 73036)
>>*Attorney for the Virginia State Board of Elections*
>>*and its members in their official capacities*
>>Office of the Attorney General
>>900 E. Main Street
>>Richmond, Virginia 23219
>>(804) 786-3847
>>fax: (804) 692-1647
>>jheslinga@oag.state.va.us

00039288