**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **ROBERT G. MARCELLUS,** *et al.* )<br>)<br>**Plaintiffs,** )<br>)<br>v.     )<br>)<br>**VIRGINIA STATE BOARD OF ELECTIONS,** *et al.* )<br>)<br>**Defendants.** ) | Case No. 3:15-cv-00481 |

### DEFENDANTS' REPLY MEMORANDUM

Defendants the Virginia State Board of Elections and its members (James B. Alcorn, Clara Belle Wheeler, and Singleton McAllister, in their official capacities as Chairman, Vice-Chairman, and Secretary, respectively) state as follows in reply to Plaintiff's Opposition (docket # 34) and in further support of granting summary judgment to the Commonwealth.

### ARGUMENT

**I.    This case concerns the ballot, not Plaintiffs' expression or association.**

Plaintiffs admit that they seek "official recognition on the ballot by the Commonwealth," in the form of "the Commonwealth's official designation on the ballot of their party affiliation." Plaintiffs' Opp'n (docket # 34) at 4. Plaintiffs recognize that the ballot "is not a vehicle for the discussion of ideas" and that the Supreme Court has considered the issue and has rejected the idea that the ballot is a public forum. *Id.* at 13. These undisputed matters of fact and law are central to this case and fatal to Plaintiffs' claims.

This case is not about association or the private expression of such association. Va. Code § 24.2-613 does not limit parties' and candidates' ability to associate with each other. It also does not restrict or penalize the myriad ways and places that parties and candidates can express that association, including on election day outside polling places. And § 24.2-613 does not

1

obstruct voters' access to information – any voter who seeks more information about a candidate's party affiliation or lack thereof can verify the fact of association between parties and candidates on an official state elections website.[1]

This case is about the official content printed by the Commonwealth on the ballot.

## II. Plaintiffs have not proven an injury to constitutional rights, so the *Anderson/Burdick* analysis necessarily tips in the Commonwealth's favor.

Step one in the *Anderson/Burdick* inquiry requires assessing "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate."[2] Plaintiffs concede (as *Timmons* and *Washington State Grange* require) that the Constitution does not entitle parties or candidates to a party identifier on the ballot; Plaintiffs emphasize instead that each count in the Complaint "asserts a discrimination claim and only a discrimination claim." Plaintiffs' Opposition (docket # 34) at 3. Plaintiffs assert that this alleged discrimination imposes "a lesser burden" on associational rights (*id.*), but, as previously briefed, Plaintiffs have offered no evidence that the Commonwealth's distinction between offices with respect to ballot party identifiers has any deleterious effect on voters or

---

[1] The statute's lack of effect on private association and speech differentiates this case from many cases cited in Plaintiffs' Opposition (docket # 34). *See, e.g.*, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (banning producing, distributing, or possessing certain sexually explicit images); *City of Ladue v. Gilleo*, 512 U.S. 43 (1994) (prohibiting displays of most signs by homeowners); *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993) (restricting religious animal sacrifice rituals); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985) (penalizing persons dealing in "obscene matter"); *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979) (prohibiting newspapers from releasing the names of juvenile defendants).

Other cases cited by Plaintiffs involve decisively dissimilar subjects and classifications. *See, e.g.*, *Jiminez v. Weinberger*, 417 U.S. 628 (1974) (differentiating Social Security benefits based on a suspect classification, illegitimacy); *Vance v. Bradley*, 440 U.S. 93 (1979) (requiring that older workers retire earlier if in the Foreign Service); *Craig v. Boren*, 429 U.S. 190 (1976) (prohibiting the sale of beer to women age 18-21 but not men of the same age); *Dombrowski v. Pfister*, 380 U.S. 479 (1965) (anti-communist laws); *Skinner v. Oklahoma*, 316 U.S. 535 (1942) (mandatory sterilization of "habitual criminals").

[2] *Sarvis v. Judd*, 80 F. Supp. 3d 692, 698 (E.D. Va. 2015) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)); *see* Mem. Op. (docket # 21) at 9-10.

2

even on parties or candidates.  *See* Defendants' Mem. Opp'n (docket # 33) at 11-14.  Given the lack of a right to a ballot party identifier and the absence of evidence of any actual negative effects of the Commonwealth's distinction between offices with respect to ballot party identifiers, there is either no injury to constitutional rights or only a speculative injury.  Either way, there is nothing to balance in the *Anderson*/*Burdick* framework against the Commonwealth's asserted interests, so the Commonwealth prevails under *Anderson*/*Burdick*.

Plaintiffs fare no better by referring to a ballot party identifier as "a governmental benefit" that they have been "denied."  *See* Plaintiffs' Opposition (docket # 34) at 4.  Unlike "Food Stamp benefits" (*id.*) or other financial assistance, which is inherently beneficial, there is no evidence that a party identifier is a benefit at all.  This is not a time of universal acclaim for political parties and partisanship; by some measures, regard for political parties has never been lower.[3]  Absent evidence, it is just as plausible to claim that a ballot party identifier is harmful and the absence of an identifier benefits local office candidates by increasing their ability to appeal to independent voters and others who do not like or affiliate with a candidate's party.

Given the admitted lack of a constitutional right to party identifiers on the ballot and the absence of evidence of an injury due to the statutory distinction between offices, the Court should conclude that there is no injury to constitutional rights and rule in favor of the Commonwealth at step one of the *Anderson*/*Burdick* framework.  If the Court progresses to the second step, the case still should be resolved in favor of the Commonwealth.

---

[3]  *See* Gallup, "Neither Major Party Cracks 40% Favorability in Latest Poll" (March 16, 2015) *at* http://www.gallup.com/poll/181985/neither-major-party-cracks-favorability-latest-poll.aspx (last visited Dec. 4, 2015) ("This is the only time since Gallup began tracking the party's images this way in 1992 that neither party has achieved at least 40% favorability from the public.").

**III. The Commonwealth has asserted interests sufficiently weighty to justify any minimal burden on Plaintiffs' rights.**

The bulk of Plaintiffs' Opposition focuses on the second step of the *Anderson/Burdick* analysis, attacking the logic and sufficiency of the interests asserted by the Commonwealth in support of Va. Code § 24.2-613's distinction between offices with respect to whether to print party identifiers on the ballot. Without explanation, Plaintiffs' Opposition collapses the Commonwealth's three asserted interests to two. *See* docket #34 at 2. To be clear, the Commonwealth's three asserted interests are: 1) minimizing partisanship in local government and elections (including allowing local offices to be officially nonpartisan), 2) promoting impartial local governance and administration of law, and 3) attempting to ensure that as many citizens are eligible to hold local office as possible (under the Hatch Act). The Commonwealth's interests are valid and sufficiently weighty.

**A. Minimizing partisanship in local government and elections**

Plaintiffs criticize the Commonwealth's interest in minimizing partisanship on two grounds: 1) it "cannot reasonably be confined to local offices; it applies to *all* elected offices," and 2) the Commonwealth allegedly "has officially encouraged partisanship [elsewhere] in Title 24.2," which is inconsistent with the interest. Neither criticism is well-founded.

The contention that minimizing partisanship applies equally to all elected offices rests on Plaintiffs' erroneous belief that there is no difference between local offices and the offices (federal, statewide, and General Assembly) for which the ballot identifies candidates' parties. As previously briefed, several local offices have a different nature (judicial, quasi-judicial, or administrative), and even the most similar local offices – the members of local governing bodies – have a fundamentally different policy-making role under Virginia law. *See* Defendants' Mem. Opp'n (docket # 33) at 8-10. The different scope of policy-making, for example, supports a

4

conclusion that federal, statewide, and General Assembly offices unavoidably touch on national and highly partisan issues, but that local elected offices deal primarily with non-partisan issues of basic services and community management. *See* Darr Decl. (Ex. D-16, docket # 30-6) ¶ 10.

As for Plaintiffs' second criticism, it is undisputed and unremarkable that parties have a variety of roles under Title 24.2 of the Code of Virginia. But Plaintiffs' criticism is a more general expression of the same all-or-nothing fallacy that Plaintiffs apply to party identifiers on the ballot. The Commonwealth need not try to eradicate parties from the electoral process entirely (assuming that could even be done) to support the minimizing partisanship interest. The Commonwealth reasonably could conclude that parties' organizational functions are helpful in promoting the nomination of candidates, while at the same time concluding that it would be undesirable to convey an official message on the ballot that voters should focus on partisan affiliations as they vote for local elected offices.[4]

There is no underinclusiveness problem (*see* Plaintiffs' Opposition [docket # 34] at 8) because there is a fundamental difference between an official elections website and the ballot. On the "What is on my Ballot?" website, the Commonwealth relays factual information to voters and connects them to candidates, conveying not only candidates' party affiliation but their campaign website address too. *See* Ex. J-3 (docket # 17-3). By contrast, the ballot is the tool for final decision-making; opportunities for voters' information gathering and candidate interactions are over. And even if there were underinclusiveness, the usual concern does not exist – with respect to whether to print a party identifier, the Commonwealth distinguishes only between

---

[4] The statutes characterized by Plaintiffs as encouraging partisanship relate to the nomination of candidates. *See* Plaintiffs' Opposition (docket # 34) at 6. The only exception is Va. Code § 24.2-612, which appears to be included mistakenly, given that § 24.2-612 does not discuss political parties at all.

offices and does not disfavor particular candidates or viewpoints. *See* Defendants' Mem. Opp'n (docket # 33) at 4-6.

### B. Promoting impartial governance and administration of law

Plaintiffs' Opposition ignores the Commonwealth's second interest – promoting impartial local governance and administration of law – so no more need be said beyond what the Commonwealth already has briefed. *See* Defendants' Mem. (docket # 30) at 17-19.[5]

### C. Attempting to ensure that as many citizens are eligible to hold local office as possible (under the Hatch Act)

Plaintiffs' criticize the Commonwealth's interest in broadening opportunities for federal employees to seek and hold office on the grounds that § 24.2-613 "has no effect on the Hatch Act because the display of a party identifier does not determine whether an office is partisan." Plaintiffs' Opposition (docket # 34) at 8. The Commonwealth has never put forth that straw man. The presence or absence of ballot party identifiers does not determine whether an election is partisan, but ballot party identifiers remain relevant, for a few reasons.

As a general matter, if the State conveys official recognition and endorsement (through ballot party identifiers) of partisanship with respect to local offices, there will be more partisanship relating to local offices. Also, adding ballot party identifiers for local office candidates would create a reason for candidates to choose seeking a party nomination over

---

[5] Plaintiffs Opposition (at 5) cites *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), which actually supports the Commonwealth. *Broadrick* upheld Oklahoma's Hatch Act analogue, which restricted partisan activity by certain personnel, against vagueness and overbreadth challenges. The Court observed that overbreadth challenges exist to prevent chilling effects (of which there can be none here because Va. Code § 24.2-613 does not regulate private speech or activity) and that laws not "directed at particular groups or viewpoints" (such as § 24.2-613) are "subject to a less exacting overbreadth scrutiny." *Id.* at 612, 616. The Court noted, in discussing the Equal Protection Clause, that "the legislature must have some leeway" in determining which personnel should be subject to the law. *Id.* at 607 n.5. Here too the General Assembly must have some leeway in determining which offices should have candidate party identifiers on the ballot.

6

qualifying by petition. More partisan local office elections mean less opportunity for federal employees to seek and hold local office.

More specifically, invalidating § 24.2-613's restriction on party identifiers would directly facilitate more partisan candidates of recognized political parties and of political parties. A "recognized political party" under Virginia law is sometimes called a "minor" party elsewhere; it has a party organization that has existed for at least six months, but none of its candidates have received the requisite 10% of the vote in an election for statewide office that would make it a "political party" and thereby qualify it to hold its own nomination processes. *Compare* Va. Code § 24.2-613 (defining "recognized political party") *with* § 24.2-101 (defining "party" or "political party"). Candidates that seek to appear as representative of a recognized political party must first qualify for the ballot as an independent, then may produce documentation verifying that they represent a recognized political party. *See* Va. Code § 24.2-613. Political parties (*i.e.*, "major" parties) can nominate directly, and normally do so, but the candidate certification process (*see* Va. Code § 24.2-511) also would allow a party to nominate a candidate who has qualified by petition. Removing the bar on ballot party identifiers for local office candidates would provide an inducement for local candidates of both recognized political parties and political parties to take the party affiliation step after qualification by petition.

Finally, an injunction that invalidates the challenged statutory restriction on ballot party identifiers would create broader confusion and threaten to undo Virginia's nonpartisan candidate qualification processes. Such nonpartisan processes work by mandating that candidates be nominated (or qualify for the ballot) only by petition.[6] As described in the preceding paragraph,

---

[6] *See, e.g.*, Va. Code § 10.1-523 (discussing nominating petitions for Soil and Water Conservation District Directors); Va. Code § 22.1-57.3(E) ("In order to have their names placed on the ballot, all candidates [for membership on an elected School Board] shall be nominated
*(footnote continued on next page)*

7

candidates who qualify by petition start out as "Independent" for purposes of ballot party identifiers, but paperwork may then be filed to identify such a candidate as the candidate of a recognized political party or a political party.  Absent the restriction by office on party identifiers, any candidate for any office could file the requisite paperwork and claim that their party identifier should be listed.  Where even a single candidate does so, the election would become officially partisan, and federal employees not exempted from the Hatch Act would no longer be able to run in such an election.  Moreover, absent the restriction by office on party identifiers, nonpartisan nominating processes seem meaningless – their only effect would be to require candidates who want to run as party candidates to file extra paperwork after qualifying by petition.  The undermining of nonpartisan nominating processes would have wide-ranging effects (on other parts of the Code of Virginia, locality charters, and local ordinances or practices) and is certain to cause confusion.

In sum, a ruling for Plaintiffs would promote partisanship generally and partisan candidacies specifically and would undermine nonpartisan nomination processes, all of which would reduce the ability of federal employees to seek and hold local office.

### IV. The ballot expresses the Commonwealth's official messages, as to which Plaintiffs have no right to compel alterations.

As argued above, the Commonwealth should prevail at both steps of the *Anderson*/*Burdick* analysis.  In the alternative, the Commonwealth also should prevail upon examination of the nature of the ballot.

---

only by petition as provided by general law pursuant to § 24.2-506."); City of Virginia Beach Charter § 3.02:1 (1971 Va. Acts ch. 86, *as amended, available at* http://law.lis.virginia.gov/charters/virginia-beach ("Candidates for council shall be nominated only by petition in the manner prescribed by general law.").

As discussed in § I, *supra*, this case is about whether the Commonwealth conveys "official recognition" or an "official designation" of local office candidates' party affiliations. The Commonwealth has, by statute, exercised its right to determine the official ballot content, and it is not required to add messages that the Plaintiffs want the Commonwealth to convey.

Ballots are closely identified with the State. Each ballot is a government article serving the critical governmental purpose of conducting elections. The governmental nature of ballots is clear from their faces – the State places "Commonwealth of Virginia" and "Official Ballot" at the top of every ballot.[7] The State requires every voter to use an official ballot (either printed or through an approved electronic voting system); every ballot design is submitted to the Department of Elections, a state agency, for verification and approval[8]; and every ballot is created, printed, and distributed to voters by elections officials pursuant to state law. *See, e.g.*, Va. Code §§ 24.2-612 and 24.2-617. The State maintains direct control over the design of the ballot and has created detailed laws and regulations governing ballot content. *See, e.g.*, Va. Code § 24.2-613; Ballot Standards and Verification Procedures (docket # 17-1).

Given such circumstances, ballot styles "are meant to convey and have the effect of conveying a government message, and they thus constitute government speech." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. ___, 135 S. Ct. 2239, 2250 (2015).[9] Plaintiffs' claims of discrimination therefore fail. "[W]hen the government speaks it is entitled

---

[7] *E.g.*, Docket # 33-1 at 2; Docket # 12-4 at 9, 161, 169; *see* Ballot Standards and Verification Procedures (docket # 17-1) at 1 (providing that, as part of the Ballot Header, "The 'Commonwealth of Virginia' and 'Official Ballot' may appear on two lines or one.").

[8] Cortes Declaration (docket # 12-4) ¶ 5; *see* Va. Code § 24.2-612.

[9] The fact that voters later use ballots for their own private speech and expression (through voting) does not alter the nature of the printed ballot style. The law is capable of distinguishing, whenever the need arises, between the ballot style (the material printed on a ballot by government) and the markings added later by individual voters to express their views.

to promote a program, to espouse a policy, or to take a position," and the government is not required to convey other, alternative messages. *Id.* at 2246. Just as a private entity could not force Texas to include a group name or logo on a license plate, private entities may not force Virginia to include party identifiers on the ballot. Notably, the alleged discrimination here is far less than that allowed in *Walker* – here, there is no discrimination against a particular speaker or viewpoint. *See* Defendants' Mem. Opp'n (docket # 33) at 4-6.

If Plaintiffs or others are dissatisfied with the Commonwealth's choice of what to say – or not to say – on ballots, they have other recourse: "it is the democratic electoral process that first and foremost provides a check on government speech." *Id.* at 2245. Political parties' ability to achieve change through the democratic process does not seem open to serious debate, given that every member of the General Assembly is part of either the Republican or Democratic Party.[10] And, as previously briefed, party identifiers on the ballot have received legislative consideration repeatedly. *See* Defendants' Mem. Opp'n (docket # 33) at 13-14 & n.9.

## CONCLUSION

Because the Commonwealth declining to print a party identifier on the ballot for local office candidates does not restrict Plaintiffs' constitutional rights, because any minimal limitation the Commonwealth's rule does impose is sufficiently justified by the Commonwealth's important regulatory interests, and because ballots convey official messages, this Court should grant summary judgment in favor of Defendants on both counts in the Complaint.

---

[10] *See* Virginia House of Delegates Member Listings *at* http://virginiageneralassembly.gov/house/members/members.php (last visited Dec. 4, 2015); Senate of Virginia Telephone List *at* http://apps.senate.virginia.gov/Senator/index.php (last visited Dec. 4, 2015).

                                        Respectfully submitted,

                                        VIRGINIA STATE BOARD OF ELECTIONS
                                        JAMES B. ALCORN
                                        CLARA BELLE WHEELER
                                        SINGLETON MCALLISTER

                                By:     /s/ - Joshua D. Heslinga
                                             Counsel

Mark Herring
Attorney General of Virginia

Cynthia E. Hudson
Chief Deputy Attorney General

John W. Daniel II
Deputy Attorney General, Commerce, Environment and Technology Division

Heather Hays Lockerman
Senior Assistant Attorney General, Chief, Financial Law & Government Support Section

Joshua D. Heslinga (VSB # 73036)
Assistant Attorney General
jheslinga@oag.state.va.us

Anna T. Birkenheier (VSB # 86035)
Assistant Attorney General
abirkenheier@oag.state.va.us

*Attorneys for the Virginia State Board of Elections and its members in their official capacities*

Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-3847
fax: (804) 692-1647

## **CERTIFICATE OF SERVICE**

I certify that, on December 4, 2015, I am electronically filing the foregoing document with the Clerk of Court using the CM/ECF system, which will serve such filing on counsel of record:

>Patrick M. McSweeney
>McSWEENEY, CYNKAR & KACHOUROFF, PLLC
>3358 John Tree Hill Road
>Powhatan, Virginia 23139
>TeL (804) 937-0895
>patrick@mck-lawyers.com
>    *Counsel for Plaintiffs*

>                /s/
>Joshua D. Heslinga (VSB # 73036)
>*Attorney for the Virginia State Board of Elections*
>*and its members in their official capacities*
>Office of the Attorney General
>900 E. Main Street
>Richmond, Virginia 23219
>(804) 786-3847
>fax: (804) 692-1647
>jheslinga@oag.state.va.us

00056483