## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**ROBERT G. MARCELLUS,** *et al.,*

      **Plaintiffs,**

v.                                  **Civil Action No. 3:15cv481**

**VIRGINIA STATE BOARD OF ELECTIONS,** *et al.,*

      **Defendants.**

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiffs Robert G. Marcellus, David Williams, Barry Hodge, Timothy Gresham, and the Powhatan County Republican Committee ("PCRC") (collectively, "Plaintiffs") and Defendants Virginia State Board of Elections ("SBE"), James B. Alcorn (Member and Chair), Clara Belle Wheeler (Member and Vice Chair), and Singleton B. McAllister (Member and Secretary) (collectively, "Defendants").[1] (ECF Nos. 29, 31.) Both motions for summary judgment have been filed pursuant to Federal Rule of Civil Procedure 56.[2] Plaintiffs and Defendants have, respectively, responded to the cross-motions, and both parties have replied. (ECF Nos. 33, 34, 35, 36.) The Court heard oral argument. Accordingly, the matter is ripe for disposition. The

---

[1] Plaintiffs sued the three members of the SBE in their official capacities.

[2] Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[3] For the reasons that follow, the Court will deny Plaintiffs' Motion for Summary Judgment and grant the Defendants' Motion for Summary Judgment.

## I. Factual and Procedural Background[4]

### A.   Factual History

#### 1.   The Challenged Statute

Plaintiffs challenge Virginia Code § 24.2-613 ("Section 24.2-613"), which provides that in elections for "federal, statewide, and General Assembly offices only," ballots must include a political party affiliation alongside a candidate's name.  Plaintiffs ask this Court to declare Section 24.2-613 unconstitutional for two reasons: first, because it allegedly violates the Plaintiffs' right to the freedom of association to advance shared political beliefs under the First[5] and Fourteenth[6] Amendments to the United States Constitution; and second, because it allegedly denies Plaintiffs their equal protection rights under the Fourteenth Amendment.  In order to contextualize Plaintiffs' claims challenging Section 24.2-613, while viewing the record as a

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[4] The Court assumes familiarity with the procedural and factual background of this case as summarized in its September 9, 2015 Memorandum Opinion and Order. (ECF Nos. 21, 22.) That opinion and order more fully describe the procedural and factual background of this case. The Court repeats only the background necessary to address the present motions for summary judgment. All terms defined in that opinion and order will continue unless otherwise noted.

[5] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

[6] "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

whole and drawing inferences in Plaintiffs' favor, the Court first traces the history of the statute. The Court offers this background having viewed each motion on its own merits.

In 1870, the Commonwealth of Virginia (the "Commonwealth" or "Virginia") adopted the written ballot, which was to consist of "a white paper ticket" containing only "the names of the persons for whom the elector intends to vote" and "the office to which each person so named is intended by him to be chosen." 1869–70 Va. Acts ch. 76, at 85. Since the 1870 adoption of the written ballot, Virginia has never printed party affiliations for candidates for local offices. *See, e.g.*, Va. Code, tit. 3, ch. 8, § 13 (1873); Va. Code, tit. 5, § 122 (1887); Va. Code, tit. 5, § 122 (1904); Va. Code, tit. 6, § 153 (1919); Va. Code § 24,215 (1950); Va. Code § 24.1-111 (1973 Repl. Vol.).

In 1970, the General Assembly amended its election statutes and began printing the party affiliation for candidates for President of the United States. *See* 1970 Va. Acts ch. 462 at 853; Va. Code § 24.1-111 (1973 Repl. Vol.) ("No names of political parties shall appear on the ballot, except in presidential elections . . . ."). In 1993, the General Assembly enacted Title 24.2 of the Code of Virginia. 1993 Va. Acts ch. 641. The 1993 version of Section 24.2-613, like its 1970 precursor, broadly proscribed the placement of party affiliation on a ballot by allowing such identification to be listed only during presidential elections: "No names of political parties shall appear on the ballot, except as provided in § 24.2-614 for presidential elections." Va. Code § 24.2-613 (1993).

The current version of Section 24.2-613, which became effective January 1, 2001, states in relevant part:

> For elections for federal, statewide, and General Assembly offices only, each candidate who has been nominated by a political party or in a primary election shall be identified by the name of his [or her] political party. Independent candidates shall be identified by the term "Independent."

3

Va. Code § 24.2-613 (2015).  Section 24.2-613's reach encompasses federal offices such as the

position of President of the United States, that of a United States Senator, and that of a member

of the United States House of Representatives.  "Statewide" offices cover the Governor of

Virginia, Lieutenant Governor of Virginia, and Attorney General of Virginia.  The General

Assembly offices referenced comprise seats in the Senate of Virginia and the Virginia House of

Delegates.

### 2.   Virginia's General Election Ballots

Under Section 24.2-613, with respect to federal, statewide, and General Assembly

offices, Virginia identifies candidates nominated by petition as "Independent," unless those

candidates produce evidence demonstrating nomination by a "recognized political party."  Va.

Code § 24.2-613.  The Commonwealth's ballots utilize the following letters, which correspond to

the names of parties, recognized political parties, and independent candidates: Democrat (D);

Republican (R); Libertarian (L); Green (G); Independent Green (IG); Constitution (C); and,

Independent (I).  Preceding the appropriate abbreviation from the aforementioned list, the ballot

lists the candidate's name, a space, a dash, and another space.

### 3.   Local Elections in Virginia

Virginia consists of 133 localities, which include counties and independent cities.  Local

elected offices in the Commonwealth include:  members of the governing body of localities;

members of the School Board; Clerk of Court; Commonwealth's Attorney; Commissioner of the

Revenue; Treasurer; and, Soil and Water Conservation District Director.  The Commonwealth

requires that candidates for some local offices qualify for the ballot in a nonpartisan way, by

petition.  *See, e.g.*, Va. Code § 10.1-523 (Soil and Water Conservation District Directors).  Some

localities, meanwhile, have charters that govern whether candidates may be nominated by parties

or only by petition. *Compare* City of Petersburg Charter § 2-3.1 (1974 Va. Acts ch. 2) (allowing

nomination by petition or general law), *with* City of Virginia Beach Charter § 3.02:1 (1971 Va.

Acts ch. 86) (allowing nomination only by petition.)

### 4.   The Powhatan Board of Supervisors Election

On May 21, 2015, PCRC nominated Marcellus, Williams, Hodge, and Gresham as

Republican candidates for the Powhatan County Board of Supervisors. Marcellus, Williams,

Hodge, and Gresham "properly qualified to be placed on the 2015 general election ballot." (Stip.

Fact ¶ 3, ECF No. 17.) The Chair of PCRC declared Plaintiffs to be the Republican nominees

for the Powhatan County Board of Supervisors and provided this information to the SBE. In

accordance with Section 24.2-613, the November 3, 2015 general election ballot did not display

a party identifier next to the names of the individual Plaintiffs. Each of the individual Plaintiffs

intends to run for local office in the future as a nominee of a political party.[7]

---

[7] The November 3, 2015 election has taken place. The parties agree that neither the fact
that the election has taken place, nor the results of the election, is material to this case. As such,
the Court does not consider the election or its outcome in making its determination here, nor
need it do so. The fact that the election has occurred, however, raises the question of whether
this case is moot.
    Article III of the United States Constitution limits federal courts to the resolution of
actual cases and controversies, and this "requirement subsists through all stages of federal
judicial proceedings." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Accordingly,
"[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Id.* at 478
(citations omitted). The Supreme Court, nonetheless, recognizes a narrow exception to cases that
are otherwise moot when the issues are "capable of repetition, yet evading review." *Fed.
Election Comm'n v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 462 (2007). The "capable of
repetition, yet evading review" exception applies so long as: "(1) the challenged action is in its
duration too short to be fully litigated prior to cessation or expiration[;] and[,] (2) there is a
reasonable expectation that the same complaining party will be subject to the same action again."
*Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).
    Plaintiffs satisfy both prongs of the exception here. First, Plaintiffs did not bring their
challenge to Section 24.2-613 until August 17, 2015, less than three months prior to the general
election. Without question, this timeframe proved too short to fully litigate Plaintiffs' claims
before the general election. Second, the individual Plaintiffs have verified their respective
intentions to run for local office in the future as nominees of a political party. Accordingly, even

### B.   Procedural History

On August 17, 2015, Plaintiffs filed their Complaint for Declaratory Judgment and

Motion for Preliminary Injunction. (ECF Nos. 1, 3.) Defendants filed their responses to the

Motion for Preliminary Injunction, and Plaintiffs replied. (ECF Nos. 12, 13.) On September 3,

2015, the Court held a hearing on the Motion for Preliminary Injunction. On September 9, 2015,

the Court issued a Memorandum Opinion and Order denying Plaintiffs' Motion for Preliminary

Injunction. The Court concluded that laches barred the requested relief.

On November 9, 2015, in accordance with the Court's Scheduling Order, both parties

filed motions for summary judgment, with accompanying memoranda in support. (ECF Nos. 29,

30, 31, 32.) The parties filed their respective responses and replies. (ECF Nos. 33, 34, 35, 36.)

The Court heard oral argument on the motions for summary judgment.

### II.  Standards of Review

### A.   Federal Rule of Civil Procedure 56 Standard

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record

as a whole and in the light most favorable to the nonmoving party, determines that there exists no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248–50 (1986). Once a party has properly filed evidence supporting the

motion for summary judgment, the nonmoving party may not rest upon mere allegations in the

pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex*

*Corp.*, 477 U.S. at 322–24. These facts must be presented in the form of exhibits and sworn

affidavits. Fed. R. Civ. P. 56(c).

---

though the 2015 election has taken place, a reasonable expectation exists that plaintiffs could
bring a future, repetitive claim.

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24). Where the court is faced with cross motions for summary judgment, as in the instant case, the court must review each motion separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

## B. Facial Challenge to the Constitutionality of an Act

In briefing, Plaintiffs describe their challenge to the constitutionality of Section 24.2-613 as both a "facial challenge" and an "as applied challenge." (Mem. Supp. Pls.' Mot. Summ. J., at 4, 20.) At oral argument, Plaintiffs conceded that the Court's analysis would not vary under either approach. For all intents and purposes, Plaintiffs explained, Section 24.2-613 would be unconstitutional as applied to Plaintiffs[8] for the same reasons it would be unconstitutional in all other applications. Recognizing that Plaintiffs' challenge is, at base, a facial one, the Court turns to Supreme Court guidance in evaluating this claim.

---

[8] An "as applied" challenge contends that a law's application to a particular person under particular circumstances deprives that person of a constitutional right. Thus, a successful "as applied" challenge precludes the enforcement of a statute against a plaintiff alone. *See Wisc. Right To Life, Inc.*, 551 U.S. at 481.

The Supreme Court recognizes two types of facial challenges to a law's constitutionality. First, a party ordinarily "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [law] would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (first alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). The Supreme Court recognizes a second type of facial challenge "in the First Amendment context under which a law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 449 n.6 (quoting *New York v. Ferber*, 458 U.S. 747, 769–71 (1982)).

"Facial challenges are disfavored for several reasons." *Id.* at 450. Among them, "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id.* at 451 (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006)). "Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.* (citation omitted). Further, facial challenges "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id.* at 450 (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)).

### III.  Analysis

For the reasons stated below, the Court will deny Plaintiffs' Motion for Summary Judgment and will grant Defendants' Motion for Summary Judgment. Plaintiffs present their constitutional claims—purported violations of the First Amendment's right to freedom of

association and the Fourteenth Amendment's right to equal protection—in hybrid form. Plaintiffs claim that the failure to include local candidate party affiliation on ballots violates the candidates' and their party's respective rights to associate while unfairly discriminating against local candidates relative to individuals running for statewide or national office.[9]

By amalgamating these causes of action, Plaintiffs complicate, to some degree, this Court's application of a proper level of scrutiny. Generally, in the election context, courts turn to the so-called *Anderson-Burdick* framework (outlined below) in cases alleging violations of the right of association. By contrast, courts commonly utilize a rational basis test to assess equal protection violations after determining that no suspect class has been burdened and that no fundamental right has been implicated. *Wood v. Quinn,* 104 F. Supp. 2d 611, 614 (E.D. Va.), *aff'd,* 230 F.3d 1356 (4th Cir. 2000).

Unfortunately for Plaintiffs, their constitutional challenges falter no matter which test applies. First, Plaintiffs fail to establish that the challenged provision restricts the fundamental right to associate. Consistent with Supreme Court precedent, this Court concludes that Plaintiffs do not have a constitutional associational right to designate their respective political party on the general election ballot.

Next, the Court reviews Plaintiffs' equal protection claim under a rational basis standard, as it deems it must. Candidates for local office are not a suspect class, and Section 24.2-613 does not unconstitutionally impinge upon a fundamental right. Plaintiffs' equal protection claim fails because any discriminatory treatment experienced by Plaintiffs is rationally related to a legitimate government purpose.

---

[9] Stated otherwise, Plaintiffs allege an equal protection claim among candidates for different levels of office repackaged as a claim arising under the right to freedom of association.

9

Finally, the Court notes that, even if it were to balance Plaintiffs' claims under the *Anderson-Burdick* framework, Plaintiffs could not prevail. When blending together the First and Fourteenth Amendment contentions here, this Court cannot find that the invocation of these two rights amounts to an unconstitutional wrong.

### A.  Section 24.2-613 Does Not Violate Plaintiffs' Right to Freedom of Association

#### 1.  Parameters of the First Amendment's Right to Freedom of Association

Although the freedoms enumerated in the First Amendment do not include "association," the Supreme Court has expressly held that freedom of association is a fundamental right. The Supreme Court has declared that "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Relevant to this case, "[t]he right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes*, 414 U.S. 51, 57 (1973). As a result, the Supreme Court has "vigorously affirm[ed] the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party 'select[s] a standard bearer who best represents the party's ideologies and preferences.'" *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000) (second alteration in original) (quoting *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989)).

While fundamental, the right to associate articulated by the Supreme Court is not boundless. The Supreme Court does not, for instance, allow political parties and candidates to use ballots as a means to express their associational views. Instead, the Supreme Court repeatedly has avowed that "[t]he First Amendment does not give political parties a right to have their nominees designated as such on the ballot." *Wash. State Grange*, 552 U.S. at 453 n.7. This

is because "[b]allots serve primarily to elect candidates, not as forums for political expression." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997); *see also Libertarian Party of N.H. v. Gardner*, 638 F.3d 6, 15 (1st Cir. 2011) ("What the Libertarian Party appears to be arguing is that it had a free speech right to use the ballot to advertise who its nominees were. But the Supreme Court . . . expressly rejected the argument that a party 'has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate.'" (quoting *Timmons*, 520 U.S. at 363)); *Ohio Council 8 Am. Fed'n of State v. Brunner*, 24 F. Supp. 3d 680, 692 (S.D. Ohio 2014) ("Plaintiffs have not provided the Court with precedent that holds that judicial candidates have a constitutional right to associate by placing a party identifier by their names on the general election ballot."), *aff'd*, No. 14-3678, 2016 WL 537398 (6th Cir. Feb. 11, 2016).

## 2. Level of Scrutiny for Freedom of Association Claims

In assessing a restriction on the First Amendment's right to freedom of association, Courts typically utilize the framework articulated in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). The *Anderson-Burdick* framework provides that "the State's asserted regulatory interests need only be sufficiently weighty to justify the limitation imposed on the party's rights." *Sarvis v. Judd*, 80 F. Supp. 3d 692, 698 (E.D. Va. 2015) (citation omitted). To apply *Anderson-Burdick*, the Court weighs the following considerations:

> [The Court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these

factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson,* 460 U.S. at 789.

"'Depend[ing] upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights,' the regulation will either face strict scrutiny review or a more deferential standard of review." *Sarvis,* 80 F. Supp. 3d at 698 (alteration in original) (quoting *Burdick,* 504 U.S. at 434). "When the plaintiffs' 'rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Burdick,* 504 U.S. at 434). On the other hand, "when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.* (quoting *Burdick,* 504 U.S. at 434). "[M]odest burdens are balanced 'against the extent to which the regulations advance the state's interests.'" *Id.* (quoting *Pisano v. Strach,* 743 F.3d 927, 936 (4th Cir. 2014)). At the same time, "there is a presumption that important state interests are 'generally sufficient to justify reasonable, nondiscriminatory restrictions.'" *Id.* (quoting *Wood v. Meadows,* 207 F.3d 708, 715–17 (4th Cir. 2000)).[10]

---

[10] Justice O'Connor summarized the rationale for this approach in *Clingman v. Beaver*:

This regime reflects the limited but important role of courts in reviewing electoral regulation. Although the State has a legitimate—and indeed critical—role to play in regulating elections, it must be recognized that it is not a wholly independent or neutral arbiter. Rather, the State is itself controlled by the political party or parties in power, which presumably have an incentive to shape the rules of the electoral game to their own benefit. Recognition of that basic reality need not render suspect most electoral regulations.

544 U.S. 581, 603 (2005) (O'Connor, J., concurring).

### 3.      Plaintiffs Have Not Suffered a Violation of Their Right to Freedom of Association

The Court need not conduct an *Anderson-Burdick* review to Plaintiffs' freedom of association claim because Section 24.2-613 does not restrict Plaintiffs' First Amendment right to freedom of association. The statute at issue restricts only a local candidate's ability to *designate*—and, consequently, a voter's ability to *identify*—the local candidate's party on the general election ballot. Plaintiffs and voters alike are not unconstitutionally precluded from associating with their political party of choice. Plaintiffs point to no case law suggesting this violates the First Amendment. Differing from cases in which courts have recognized restrictions on the right to associate, Section 24.2-613 has no effect on which candidates, or which parties' candidates, appear on the ballot.

The prototypical election case involving the right to associate concerns ballot access or, relatedly, a voter's ability to vote for a certain candidate.[11] *See, e.g., Anderson*, 460 U.S. at 793 (holding that Ohio's early filing deadline for independent presidential candidates violated the First and Fourteenth Amendments); *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) (holding unconstitutional an Illinois statutory requirement that new political parties and independent candidates for elections in political subdivisions gather more than the number of signatures required for elections for statewide office); *Lubin v. Panish*, 415 U.S. 709, 718 (1974) (holding that, absent alternative means of ballot access, states cannot

---

[11] The conventional lawsuit challenging restrictions on the right to associate also generally involve the denial of a "minor" party (or its candidate) obtaining access to a ballot or, relatedly, the impingement of a voter's ability to vote for a certain candidate or party. *See McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221 (4th Cir. 1995) (evaluating claim brought by Libertarian candidate and noting that "[a]s a rule, state laws that restrict a political party's access to the ballot always implicate substantial voting, associational and expressive rights protected by the First and Fourteenth Amendments"); *see also Libertarian Party of N.H.*, 638 F.3d at 14 ("Unlike many election cases, this case is not about denial of access to the ballot or a party's inability to vote for its nominee.").

13

require indigent candidates to pay filing fees). These traditional ballot access challenges seek to eradicate actual restrictions on a candidate's (or a voter's) ability to engage with others as a means to advance political beliefs or ideas. *See Williams v. Rhodes*, 393 U.S. 23, 31 (1968) (evaluating claim brought by Independent and Socialist Parties and stating that "[t]he right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes").

The issue here concerns not whether a party or candidate can appear on the ballot—and thus become eligible for public office—but whether the Commonwealth must identify candidates on the ballot by party designation. If anything, Section 24.2-613 merely prohibits candidates from *expressing* their chosen association through the general election ballot.[12] The Supreme Court has rejected any First Amendment right to use a ballot as a forum for political expression. *Wash. State Grange*, 552 U.S. at 453 n.7; *Timmons*, 520 U.S. at 363. Thus, despite the fact that Plaintiffs seek a benefit that would allow *all* candidates for local office to designate their respective party associations on the general election ballot, this Court must reject the claim. The Court concludes that any purported constitutional violation arising out of the alleged discriminatory treatment must be addressed under the Fourteenth Amendment's Equal Protection Clause.

**B.    Section 24.2-613 Does Not Violate Plaintiffs' Right to Equal Protection**

**1.    Parameters of the Fourteenth Amendment's Right to Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment requires the Court to determine whether a sufficient purpose justifies a government's classification among people. A

---

[12] Plaintiffs do not allege any violation of their expressive rights under the First Amendment.

14

statute may not place unconstitutional burdens upon "suspect classes" of persons[13] or infringe upon a constitutional right that is deemed to be "fundamental."[14] *Wood*, 104 F. Supp. 2d at 614 (citing *Clements v. Fashing*, 457 U.S. 957, 963 (1982)).   However, the "Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution." *Williams*, 393 U.S. at 30; *see also Green Party of N.Y. v. Weiner*, 216 F. Supp. 2d 176, 188 (S.D.N.Y. 2002) ("It is axiomatic that the Equal Protection [C]lause prohibits only 'invidious' discrimination . . . .").

### 2. Level of Scrutiny for Fourteenth Amendment Equal Protection Claims

The Supreme Court has ruled that "under traditional equal protection principles, legislatures are presumed to have acted constitutionally." *Wood*, 104 F. Supp. 2d at 614 (citing *Clements*, 457 U.S. at 963).   A court discards "this presumption (and the deferential, rational basis scrutiny it entails)" only in cases involving suspect classes or fundamental rights. *Id.* (applying rational basis review in ballot access case because the Independent candidate was not a member of a suspect class and because the right to appear on a ballot is not fundamental); *see also McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807–09 (1969) (applying rational

---

[13] Suspect classes can include gender, *see, e.g., Craig v. Boren*, 429 U.S. 190, 198 (1976) (applying intermediate scrutiny to challenge regarding gender based classification), and race, *see, e.g., Loving v. Virginia*, 388 U.S. 1, 11 (1967) (holding that racial classifications must pass strict scrutiny).

[14] Fundamental rights in the election context include the right to vote and the right to association. *See Ill. State Bd. of Elections*, 440 U.S. at 183 (explaining that ballot access restrictions, in particular, burden two fundamental rights: "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively").   Notably, Plaintiffs do not advance an argument that Section 24.2-613 burdens the fundamental right to vote.

basis test to a state statute that prohibited access to absentee ballots to pretrial detainees because no burden on the right to vote was shown).[15]

Under rational basis review, "[c]lassifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the [s]tate's goals and only if no grounds can be conceived to justify them." *Clements*, 457 U.S. at 963 (citing *McDonald*, 394 U.S. at 808–09; *McGowan v. Maryland*, 366 U.S. 420, 425–26 (1961)). "The Constitution does not require the [s]tate to choose ineffectual means to achieve its aims." *Id.* at 968–69 (quoting *Storer v. Brown*, 415 U.S. 724, 736 (1974)). Thus, "[u]nder traditional equal protection principles, a classification is not deficient simply because the [s]tate could have selected another means of achieving the desired ends." *Id.* at 969 (citations omitted).

On the other end of the spectrum, when a government classification "severely" burdens a fundamental right, the Court reviews government action under the strict scrutiny test. *See Burdick*, 504 U.S. at 434. Because "[m]ost cases fall in between these two extremes[, w]hen a plaintiff alleges that a state has burdened [fundamental] rights through . . . disparate treatment," but not necessarily severely burdensome treatment, the Court reviews the equal protection claim

---

[15] The *Anderson-Burdick* test does not apply simply because Plaintiffs have *alleged* a First Amendment claim in tandem with an equal protection claim. Appellate courts have explained that, in the equal protection context, "[t]he precise character of the state's action and the nature of the burden on [the plaintiff] will determine the appropriate equal protection standard. *Obama for Am. v. Husted*, 697 F.3d 423, 428, 430 (6th Cir. 2012) (noting that when a state regulation treats voters differently in a way that burdens the fundamental right to vote, the *Anderson-Burdick* standard applies); *see also Biener v. Calio*, 361 F.3d 206, 214–15 (3d Cir. 2004) (noting that "[t]he scrutiny test depends on the [statute's] effect on [the plaintiff's] rights").

using the more flexible standard of the *Anderson-Burdick* test.[16]  *Obama for Am.*, 697 F.3d at 429.

### 3.    Plaintiffs Have Not Suffered a Violation of Their Right to Equal Protection

Similar to its analysis regarding Plaintiffs' right to freedom of association, the Court need not undertake an *Anderson-Burdick* analysis in assessing Plaintiffs' right to equal protection of the laws.  First, the Court's inquiry does not concern alleged discrimination of a suspect class. The classification drawn by the legislature in this case distinguishes between local candidates and non-local candidates, the latter of which are delineated as "federal, statewide, and General Assembly offices."  Second, as already stated, the inquiry does not concern discrimination among people as to the exercise of the fundamental right to freedom of association.  The rational basis test controls.

Applying the rational basis test, the Court finds legitimate the governmental interests asserted by the Commonwealth:  (1) minimizing partisanship at the local government level, including during elections; (2) promoting impartial governance; and, (3) maximizing the number of citizens eligible to hold local office under the Hatch Act.[17]

---

[16] Although the Supreme Court has not applied the *Anderson-Burdick* test squarely to equal protection claims, circuit courts have recognized its vitality in evaluating many challenges to restrictions in the electoral context, especially ballot access cases. *See, e.g., Green Party of Tenn. v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015) ("While the Supreme Court has not yet applied this test to ballot-access challenges on pure equal-protection grounds, our cases hold that the *Anderson-Burdick* test serves as 'a single standard for evaluating challenges to voting restrictions.'"); *Rogers v. Corbett*, 468 F.3d 188, 194 (3d Cir. 2006) (evaluating access to ballot for "minor" parties and concluding "that *Anderson* sets out the proper method for balancing both associational and equal protection concerns and the burdens that the challenged law creates on these protections as weighed against the proffered state interests").

[17] The Hatch Act limits the political activities of federal employees, employees of the District of Columbia, and certain employees of state and local governments. *See* 5 U.S.C. §§ 7321–7326.

First, the Court sees as a legitimate governmental interest Virginia's aim to reduce partisanship at the local government level. The Commonwealth persuades the Court that it is rational to conclude that local government, which features numerous quasi-judicial positions and "nuts and bolts" governing functions, stands to benefit from the absence of the divisiveness that can accompany partisan politics.

Second, the Court recognizes Virginia's legitimate interest in promoting impartial local governance, which, in turn, intends to preserve or enhance public confidence with respect to local politics. The Supreme Court has declared that the impartial execution of the laws constitutes a "great end of Government." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 565 (1973). The Supreme Court reasoned in *National Association of Letter Carriers* that partisan officeholders may not be able to effectively fulfill their duties in the face of partisan pressures and influences. *See id.* ("[I]t is essential that federal employees, for example, not take formal positions in political parties, not undertake to play substantial roles in partisan political campaigns, and not run for office on partisan political tickets. Forbidding activities like these will reduce the hazards to fair and effective government."). The Commonwealth's desire to uphold this "great end of Government" reflects a legitimate interest.

Finally, the Court views as legitimate Virginia's interest in permitting federal employee eligibility for local office. Pertinent here, the Hatch Act bars federal employees from running as candidates for public office in partisan elections. *See* 5 U.S.C. § 7323(a)(3); 5 C.F.R. § 734.203(b). By excluding party identifiers on local election ballots, Section 24.2-613 assists Virginia citizens such as federal employees whose political options are otherwise limited by the

Hatch Act. Section 24.2-613 broadens eligibility for them to run for local office.[18] Party

designation alone does not determine the partisan nature of an office under the Hatch Act, but it

serves as a likely starting point of inquiry. Section 24.2-613 broadens the pool of potential

political candidates, which promotes opportunity for greater involvement in the democratic

process. This objective plainly reflects a legitimate end desired by the Commonwealth.

Accordingly, because Section 24.2-613 bears a rational relationship to legitimate state

interests, the Court will grant summary judgment in favor of Defendants on Plaintiffs' claim

alleging violation of the right to equal protection.

### C. Even Were This Court to Evaluate Plaintiffs' Claims Pursuant to *Anderson-Burdick*, the Commonwealth's Interests Outweigh Any Burden on Plaintiffs' Rights

Despite settled law to the contrary, Plaintiffs advance the argument that this Court should

apply an *Anderson-Burdick* analysis because there exists an associational rights "component" to

their equal protection claim, and vice versa. Even if this Court were to determine that *Anderson-Burdick* pertained here, its application would weigh in favor of Defendants. According to

Plaintiffs, any interests Virginia might have in implementing Section 24.2-613 do not necessitate

placing a burden on their First Amendment right to associate.[19] Plaintiffs' argument fails.

First, as to the character and magnitude of the injury alleged, Plaintiffs suggest that by

denying party identifiers on the general election ballot in local elections, the Commonwealth

deprives Plaintiffs of a "valuable 'voter cue' or 'partisan cue' in elections." (Mem. Supp. Pls.'

Mot. Summ. J. at 7.) Plaintiffs posit, if voters are not "tipped off" about a particular candidate's

party on the face of the ballot, voter confusion may ensue. The Court finds that the prohibition

---

[18] The parties agree that the Commonwealth serves as the place of residence for 132,613 federal civilian employees as of December 2014.

[19] Plaintiffs concede the burden here is not severe and do not ask the Court to apply the strict scrutiny test reserved for such restrictions.

on party identifiers poses little risk of voter confusion. The Supreme Court's decision in *Washington State Grange* provides helpful analysis to this point.

In *Washington State Grange*, voters of the State of Washington passed an initiative ("I–872"), providing that candidates must be identified on the primary ballot by their *self-designated* party preference. 552 U.S. at 444. On this so-called blanket ballot, voters were permitted to vote for any candidate, and the two top vote-getters for each office, regardless of party preference, were to advance to the general election. *Id.* The Republican Party ultimately "contended that the new system violate[d] its associational rights by usurping its *right to nominate* its own candidates and by forcing it to associate with candidates it does not endorse." *Id.* at 448 (emphasis added). As explained by the Supreme Court, the Republican Party "argue[d] that even if voters do not assume that candidates on the general election ballot are the nominees of their parties, they will at least assume that the parties associate with, and approve of, them." *Id.* at 454. Thus, the Republican Party reasoned, initiative I-872 "compels them to associate with candidates they do not endorse, alters the messages they wish to convey, and forces them to engage in counterspeech to disassociate themselves from the candidates and their positions on the issues." *Id.*

Rejecting this argument, the Supreme Court concluded that it "depends upon the belief that voters can be 'misled' by party labels." *Id.* (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 220 (1986)). The Court explained: "There is simply no basis to presume that a *well-informed electorate* will interpret a candidate's party-preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or

approves of the candidate." *Id.* (emphasis added) (citing *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 13–14 (1988)).[20]

The inverse to the reasoning articulated by the Supreme Court in *Washington State Grange* also is true. No basis exists to presume that the well-informed electorate of Virginia would interpret the wholesale lack of party identifiers to mean that a specific candidate is not a party's chosen nominee or that the party does not associate with or approve of that candidate. Surely, in view of the general election ballot alone, the Commonwealth's voters are not misled to assume anything about a candidate's party affiliation. *Cf. Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992) ("With respect to the political designations of the candidates on nomination papers or on the ballot, a State could wash its hands of such business and leave it to the educational efforts of the candidates themselves, or their sponsors, during the campaigns.").[21] In fact, a voter need simply turn to the news, political advertising, or even the SBE website to find relevant information about party affiliation at the local level. As such, Plaintiffs assert minimal injury stemming from voter confusion.

Second, Plaintiffs' bare allegations of disparate treatment do not otherwise demonstrate that Section 24.2-613 injures them. Critically, Virginia does not vary in its treatment of *types* of

---

[20] In *Washington State Grange*, the Supreme Court distinguished the blanket primary found unconstitutional in *California Democratic Party v. Jones*. The Court explained that the State of Washington's law "never refers to the candidates as nominees of any party . . . nor does it treat them as such." 552 U.S. at 453 (noting that the primary ballots did not serve to determine the nominees of any political party, but instead served to winnow the number of candidates).

[21] It bears mention that, in *Rosen*, the State of Ohio did not, as the United States Court of Appeals for the Sixth Circuit suggested it could, "wash its hands" of providing any party designation on the ballot at issue. The statute in that case created a distinction between major party and Independent candidates in terms of treatment on the general election ballot. *Id.* at 173. Specifically, the statute did not permit Independent candidates to provide a voter cue next to their names on the ballot. In light of the invidious discrimination of Independent candidates, the court found the statute unconstitutional. *Id.* at 178.

candidate for local offices. For *all* local offices, no party—whether partisan or not—has a party identifier included on the general election ballot. The classification exists between different *levels* of government office. Any putative advantage gained by candidates running for one level of political office does not affect candidates running for an unrelated position. At base, any injury flowing from Section 24.2-613's restriction on the right to associate is minimal.

Turning to the Commonwealth's interests articulated above, the Court would conclude that the legitimate and strong interests plainly outweigh any negligible burden imposed on Plaintiffs' associational or equal protection rights. The reduction of partisanship at the local level, the promotion of impartial execution of laws in local governance, and the expansion of eligible political candidates all present a legitimate and strong underpinning to Section 24.2-613. Thus, were the Court to employ the *Anderson-Burdick* framework, it Court could not find that Section 24.2-613 unnecessarily burdens Plaintiffs' rights. Accordingly, even if the Court were to determine that Plaintiffs' constitutional rights are restricted by Section 24.2-613, the balancing test under *Anderson-Burdick* would favor Defendants.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Defendants' Motion for Summary Judgment (ECF No. 29) and will deny Plaintiffs' Motion for Summary Judgment (ECF No. 31).

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date:  3/4/16